# HUGHES *v.* OREGON RAILWAY AND NAV. CO.

PARTIES—CONSIDERATION.—A promise made for the benefit of a third person who thereby becomes the real party in interest, will support an action by such third person under sec. 27, p. 110, Gen. Laws of Oregon, though such promise be under seal.

COVENANT.—In a covenant with B, C and D to indemnify them against liability on a bond, wherein they are bound jointly and severally, the covenant will follow the bond and be, also, joint and several.

APPEAL from Multnomah County.

*Geo. H. Williams* and *Ellis G. Hughes,* in person, for appellant.

*C. B. Bellinger,* for respondent.

The facts, as confessed by the demurrer to the complaint, are as follows:

That the plaintiff, being an attorney-at-law, in the year 1880 acted as the attorney of the Oregonian Railway Com-

pany, limited, in the purchase for it of the Dayton, Sheridan & Grand Ronde railroad, and as one of the incidents of said purchase, and for the sole benefit of said company, and without himself having any interest whatever in the subject matter, he, as surety for said company, signed with others a certain contract of indemnity, which was conditioned for the indemnifying of one Joseph Gaston against all claims against him arising out of the construction or operation of the Dayton, Sheridan & Grand Ronde railroad, and its terms made the obligations joint and several as to the signers thereof.

That about the month of February, 1881, B. B. Branson and others commenced certain actions against the Dayton, Sheridan & Grand Ronde railroad company to recover judgments against it on certain claims against it known as "freight receipts," and in March of the same year recovered judgments thereon.

That in the month of May, 1881, negotiations being then pending between the Oregonian Railway Company, limited, and the respondent herein for the lease of the road of the former to the latter, this appellant notified the former of the fact of the judgments against the D., S. &. G. R. R. Co., and that they were obtained for the purpose of reaching him and the other signers of the obligation given Gaston, and that as he had signed the same solely for the benefit of said company, without any benefit to himself, he should look to it to hold him harmless; and at the same time suggested to it that the matter of his indemnity as to all loss resulting from having signed said obligation be arranged and provided for in the making of the lease to the respondent.

That in the month of June, 1881, Branson and others did in fact commence suit against this respondent and others

for the purpose among other things of making this respondent liable for the payment of the judgments obtained on the "freight receipts" under the indemnity given Gaston.

That afterwards, in the months of August and September, 1881, the lease was made by the O. R. Co., L., to the respondent, which among other things contained the two following provisions:

SEC. 8. The lessees shall defend all actions of every kind that may or shall be depending against the said lessors, or that may hereafter arise during the term, in respect of the construction, maintenance or operation of said railroad, other than actions for compensation for right of way or depot grounds, as herein specified and defined, or for the recovery of the possession of any such premises, and shall pay all amounts that shall or may be recovered against the said lessors in any such action, and shall also indemnify and save harmless the said lessors of and from all causes of action, legal and equitable, and claims and demands that shall or may arise against them from the exercise of the powers conferred by this lease upon the lessees.

SEC. 12. The lessees shall indemnify William Reid, Ellis G. Hughes and James B. Montgomery against all actions, suits, proceedings, costs, damages, claims and demands in respect of freight receipts, and in accordance with a certain bond dated the second day of April, 1880, under the seals of the said William Reid, Ellis G. Hughes and James B. Montgomery, for securing one Joseph Gaston, but so far only as said bond relates to the freight receipts issued by the Dayton, Sheridan & Grande Ronde Railroad Company and so that said lessees shall be liable only to the extent of thirty thousand dollars.

That afterwards decree was entered in the circuit court holding this appellant liable on the "freight receipts" on

the agreement given Gaston, which decree was reversed on appeal to this court. That the respondent knew of the pendency of the Branson suit at the time of entering into the lease. That this appellant conducted his defense in the Branson suit at an expense to himself of $4,000, and claims that he is entitled to recover this sum from the respondent. This appeal is taken from a judgment of the court below sustaining a demurrer to the complaint alleging the foregoing facts.

By the Court, Waldo, C. J.:

By the statute of this state, a party for whose benefit a contract is made and who thereby becomes the real party in interest may sue upon it. It makes no difference that the contract is under seal. (*McDowell* v. *Laer*, 35 Wis., 171.)

It is next argued on the part of the respondent that the contract is joint, whereas the appellant has brought a separate action. The following citations will show the principle on which this point is to be decided: Washington, J., in *Sawyer* v. *Steel*, 4 Wash. C. C., 228, says: "The rule of law applicable to this subject is laid down in Slingsby's case, 5 Rep., 19, which has never been departed from to my knowledge. It is, that where the grantees are to take a joint interest in the thing granted, they must join in the action, although the covenant is made with them severally; and the reason assigned is, that a man cannot by his covenant, unless in respect of several interests, make it first joint and then several; but if the interests are severed, then the covenant in respect thereof may be severed."

Metcalf in his note to *Rolls* v. *Yato*, Yelv., 177, says: "Where the legal interest of two or more covenantees is joint, the action of covenant follows the nature of the interest even though the covenant is joint and several. * *

On the other hand, where the interest of two or more covenantees is several, though the covenant be joint, each of them may bring an action for his particular damage."

In *Withers* v. *Barker*, 3 B. & C., 254, the case in substance was this: A. covenanted with B. and C. that certain annuities payable severally to B. and C. by Y., should be duly paid and in case Y. made default, he would as often as default was made pay to B. and C. the said annuities or either of them. Y. made default in the payment to B. B. brought his action against A., and it was objected that the covenant was joint. But the court said: "Looking only to the language of the covenant in this case, it would appear to be a joint covenant; but the interest of the covenantees is several, each of them having a distinct interest in the covenant payable to him. The interest, therefore, being several, the covenant must also be several." (See, also, *Appleton* v. *Bassom*, 3 Met., 172.)

So, in the case before the court, as R. H. and M. were jointly and severally liable on the Gaston bond, the covenant of indemnity will follow the bond and be also joint and several. Whether it was competent for the parties to make it otherwise it is not necessary to inquire; for they have not done so in such positive and express terms as to exclude this construction under any view of the law. The appellant states in effect that he was severally charged on the Gaston bond, and, consequently, a separate action is properly brought.

It is argued, lastly, that the appellant cannot recover in this action because it is expressly provided that the indemnity shall be "in accordance with" the indemnity provided for by the Gaston bond, which did not extend to the freight receipts; that the words in the indemnity clause "and in accordance with" control the words "actions" etc., preced-

ing, and limit the recovery to actual liability on the Gaston bond.

The construction is otherwise. The signification given by counsel for respondent to the words "and in accordance with" would imply that two classes of actions might have been brought against R. H. & M. on the freight receipts— one in accordance with the bond, and another not in accordance with it. Now R. H. & M. were utter strangers to the freight receipts outside of the Gaston bond. They were liable to "actions," etc., only because of this bond. It would have been meaningless to provide for indemnity against the freight receipts but for the bond. Every action brought against them on the freight receipts must, on its face, purport to be brought in accordance with the bond. When the parties, with this fact in view, stipulated an indemnity against all actions, etc., brought in accordance with the bond, the natural import of such language was an indemnity against all actions on the bond whether well or ill founded. Such actions would profess to be brought in accordance with the bond, and would, in fact, be brought in consequence of the bond, which may be taken as the equivalent expression. This being the construction, the appellant brings his case directly within *Newburgh* v. *Gallatin*, 4 Conn., 340.

Judgment reversed.