PETER GAFFNEY v. JOHN SEDERBERG and Others.[1]

May 12, 1911.

Nos. 17,093—(83).

**Judicial notice — Minnesota rivers.**
    Courts of this state take judicial notice of the general topography of the

[1]Reported in 131 N. W. 333.

---

[Note] Right of third person to sue upon contract made for his benefit, see notes in 25 L.R.A. 257 and 2 L.R.A.(N.S.) 783.

state and of its rivers, including their general source, course, and outlet, but not of the precise point of water parting between one drainage area and another.

**Action by stranger to a contract.**

A stranger to a contract whereby he is to be benefited, there being nothing except the promise, cannot recover upon it; but a third party, for whose benefit a contract is made, has a right of action on it, if there be a duty or obligation to him on the part of the promisee, or he is connected with the consideration, or has a legal or equitable claim to the benefit of the promise.

**Complaint.**

Complaint considered, and *held*, that its allegations are sufficient to bring the plaintiff within the rule stated.

Action in the district court for Itasca county against John Sederberg and Herman Sederberg, Samuel Simpson, The North Land Pine Company and certain pine saw logs to recover $1,313.07 for labor in hauling logs, and to enforce a lien upon the logs. Defendant Simpson demurred to the complaint and defendant land company demurred to the complaint. From an order, McClenahan, J., overruling demurrers to the complaint, defendants appealed. Affirmed.

*Spencer & Marshall,* for appellants.

*A. T. Rock,* for respondent.

START, C. J.

The here material allegations of the complaint are to the effect following:

The defendant the North Land Pine Company (hereafter referred to as the Land Company) was and is the owner of the logs and timber hereinafter referred to. On June 29, 1908, the defendants Sederberg & Son, as parties of the first part, and defendant Simpson, as party of the second part, entered into a written contract, which is a part of the complaint. The complaint recites that the Land Company purchased the timber of the United States, and in doing so agreed with it that in the logging of the timber the Land Company would abide by the regulations prescribed by the Secretary of the Interior, and, further, that the party of the second

part had, under date of September 1, 1907, entered into a contract with the Land Company to take its place in the logging of the timber. The parties of the first part agreed to enter upon the lands in question, located in township 148, range 26, Itasca county, and cut the pine timber thereon into logs, and haul and bank them on White Fish lake, in township 149, range 26. The party of the second part agreed to pay the full sum of $5 per thousand feet for the logs so delivered, as follows: "To pay all labor bills of said first party, and furnish him with supplies at net cost at Bena, with ten per cent. added, and, when camp breaks in the spring, to pay the balance that might be due under this contract, after deducting for all labor bills and supplies furnished, except as above agreed regarding the fifty cents per thousand feet to be held back." The respective parties, when they entered into this contract, knew that the parties of the first part, in the performance of its terms on their part, would have to employ labor and teams; and the party of the second part, in view of this fact, agreed to pay all the labor bills, including labor of teams hired.

The complaint further alleges that the plaintiff's man and teams worked for John Sederberg & Son from November 4, 1909, in hauling and landing such logs and timber, until March 19, 1910, at which time they ceased their labor at the request of John Sederberg & Son and the defendant Simpson. There is now due from the defendants therefor a balance of $1,313.13. The logs were cut in township 148, range 26, on sections 1 to 9, inclusive, and 11 and 12, and hauled therefrom and landed in White Fish lake, in township 149, range 26. The plaintiff, after performing such labor and services upon the logs, in due time filed a sufficient lien statement for record in the Second lumber district of the state of Minnesota, "where said logs were and are." The defendant Land Company and Simpson severally interposed a general demurrer to the complaint, and each appealed from an order of the district court of the county of Itasca overruling their respective demurrers.

The sole ground upon which the demurrer of the Land Company is based is that the complaint shows on its face that the lien statement was not filed for record as required by the statute (R. L.

1905, § 3525), which provides for filing such statement with the surveyor general of the lumber district in which the labor or service was performed. The Second lumber district embraces the Mississippi river and its tributaries above the mouth of St. Croix lake, and the Fifth district comprises "all the waters tributary to Lake Superior, all in the counties of St. Louis, Lake, and Cook, the Little and Big Fork rivers and their tributaries, Rainy Lake, Rainy Lake river as far as the Lake of Woods, and all the tributaries of said Rainy Lake and Rainy Lake river." The Land Company here contends that the court will take judicial notice that White Fish lake, where the logs were landed, is not a tributary of the Mississippi, but the Rainy, river.

The courts of this state take judicial notice of the general topography of the state, and of the rivers of the state and their general course and destination, but not of the precise point of water parting between one drainage area and another. The complaint expressly alleges that the lien statement was filed for record in the office in the Second lumber district, where the logs *were and are*. This is admitted by the demurrer, and it necessarily follows that the labor was performed where the logs were, which was in the district in which the lien statement was filed.

Again, the demurrer admits that the logs were cut in and hauled from township 148, and there is no contention that this was not done in the Second lumber district. We are of the opinion that it appears upon the face of the complaint that the statement was filed in the district where the labor was performed.

The contention of the defendant Simpson is that the plaintiff is not entitled to maintain this action upon Simpson's promise to Sederberg & Son to pay the bills incurred in the performance of their part of the contract, for the reason that there was no privity of contract between Simpson and the plaintiff. It is true that a stranger to a contract whereby he is to be benefited, there being *nothing* except the promise, cannot recover upon it; but a third party, for whose benefit a contract is made, has a right of action on it, if there be a duty or obligation to him on the part of the promisee, or he is connected with the consideration, or has a legal

or equitable claim to the benefit of the promise. Sanders v. Classon, 13 Minn. 352, (379); Jordan v. White, 20 Minn. 77 (91); Follansbee v. Johnson, 28 Minn. 311, 9 N. W. 882; Jefferson v. Asch, 53 Minn. 446, 55 N. W. 604, 25 L.R.A. 257, 39 Am. St. 618; Kramer v. Gardner, 104 Minn. 370, 116 N. W. 925, 22 L.R.A.(N.S.) 492.

We are of the opinion that the allegations of the complaint bring the plaintiff within the rule stated. It appears on the face of the complaint that it was understood by the parties to the contract that Sederberg & Son, the promisees, would be obliged to employ the labor of others in the performance of the contract; that they would be obliged to pay those who might furnish such labor; that the plaintiff belonged to the class for whose benefit Simpson's promise was made; that he, too, was interested in the payment of any person belonging to such class, so as to secure the performance of his contract with the land company, and to protect the logs from liens; and, further, that his promise was not to pay directly to Sederberg & Son $5 per thousand feet for the logs, but that he personally would pay all labor bills, furnish supplies, and pay to them directly only the balance of the contract price. There was thus retained in his hands so much of the consideration of the contract as might be necessary to pay the labor bills. This gave to the class for whose benefit the promise was made an equitable right to enforce the promise.

The only other reason urged by the defendant Simpson in support of his demurrer is to the effect that the labor furnished by the plaintiff is not included in the promise to pay "labor bills." The complaint alleges, and the demurrer admits, that it was the intention of the parties by their contract to provide for the payment of all labor bills, including labor of teams; hence the question cannot be here disposed of as a matter of law.

Orders affirmed.