## IN RE ESTABLISHMENT OF CONSOLIDATED DITCH NO. 1 OF MARSHALL AND BELTRAMI COUNTIES.[1]

November 16, 1923.

No. 23,256.

**By certiorari landowner may review order dismissing ditch proceeding.**

1. A landowner, in the territory dismissed from a ditch proceeding, who does not claim damages and whose property cannot be benefited (in the absence of the ditch), has no right of appeal under section 5577, G. S. 1913, and certiorari is his remedy to review the order of dismissal.

**Modification of plan in proposed judicial ditch discretionary.**

2. In a judicial ditch proceeding a question of adopting a modification of the plans for the proposed ditch is a discretionary matter resting with the court.

**Grant of relief not necessary.**

3. In such proceedings the court is required to pass upon the project as brought to it; and, by such proceedings, the court is not required to grant relief of some kind.

**Findings sustained by evidence.**

4. Evidence examined and found to sustain the trial court as to benefits and cost of construction.

**Action of plaintiff equivalent to resting his case.**

5. Where a plaintiff fairly covers his field of proof and then announces: "That is all the witnesses we have present," and silently permits the other side to offer their proof; *held* that he has rested.

Upon the relation of George A. Johnson and another the supreme court granted its writ of certiorari directed to the district court for Marshall county and the Honorable Andrew Grindeland and William Watts, judges thereof, to review the order of that court dis-

[1]Reported in 195 N. W. 781.

missing in part the petition for the establishment of Consolidated Ditch No. 1 of Marshall and Beltrami counties.   Affirmed.

*W. E. Rowe, A. N. Eckstrom* and *Julius J. Olson,* for relators.

*Manahan, Sullivan & Hoogesteger* and *H. O. Berve,* for respondents.


WILSON, C. J.

Certiorari to review the order of the district court of Marshall county dismissing in part the petition for the establishment of Consolidated Ditch No. 1 of Marshall county.

This proposed drainage system would affect a large area of land in eastern Marshall and western Beltrami counties and within the watershed of Thief river.   This project involves about 500,000 acres of land with an engineer's estimated cost of $1,670,231.

The territory embraced within this proposed system already has several public ditches, which have been in existence a number of years, that are apparently not successful in their operation, but which are responsible for existing ditch liens hereinafter mentioned.

The northerly part of this territory was included in the proceedings known as Judicial Ditch No. 102, and the southerly part thereof known as Judicial Ditch No. 103, prior to the consolidation.

It is apparent from the record that drainage is badly needed and desired, but that many of the property owners feel that the cost thereof is prohibitive.

The final hearing came on in June, 1921, at which time the petitioners called about 15 witnesses including the engineer, and then their counsel announced to the court:   "That is all the witnesses we have present;" and thereupon the objectors proceeded with their testimony and called 10 or 12 witnesses in opposition to the project, and stipulated that about 80 other persons would testify to certain facts in opposition if called, and then rested.

The matter was then adjourned to November 28, 1921, at Warren, Minnesota, when the matter was again taken up by the court; and, some of the petitioners having petitioned for a modification of the system, the court announced that that question would be the only phase that he would then consider, and the court then received

evidence in reference to this feature only. Court then adjourned the matter to Thief River Falls on July 18, 1922, and to Warren on July 25, 1922.

On July 3, 1922, the court made an ex parte order, announcing that no hearing would be had on July 18, 1922, at Thief River Falls, and that the hearing at Warren on July 25, 1922, would be merely formal in character to carry out the plans of the court. This order gives a history of this proceeding in detail and announced that on July 25, 1922, the court would make an order such as is hereinafter mentioned.

On July 25, 1922, petitioners' counsel stated in open court that the petitioners desired to offer further evidence and testimony in support of the claims of the petitioners, not only covering the so-called northern project, but also the project as a whole; and then the court informed the attorneys "that there will be no testimony taken at this time either for the ditch or against it." Thereupon the counsel for petitioners called certain witnesses and made an extensive offer of proof in support of the modification of the system, along the lines petitioned for, and embraced in this offer practically every element necessary to establish a public ditch. The offer was exhaustive as to the desired modification and cost thereof. No offer was made so as to disclose what, if anything, petitioners desired to prove in behalf of the original project.

Counsel for petitioners then addressed the court: "Now with respect to the northerly end of the project it is my recollection that at the time we had our hearing on this proceeding last summer about a year ago now, the northerly end of the project made no objection to the feasibility and propriety of the establishment of the same. As I recall it, there was no evidence offered in objection to the establishment of the same, and it is my further recollection that both parties—that is, the petitioners and objectors—both rested with respect to that portion of the project. The adjournment was simply had for the purpose of clarifying the situation concerning the southerly end of the project—that is the portion that was originally embraced within Judicial Ditch 102."

Thereafter on that day the court made an order in which, among other things, the court said:

"'That in view of the present financial stringency and the fact that a large portion of the territory embraced in this drainage project is sparsely settled and situate far from a railroad, and in view of the already heavy taxation of all that portion of the territory mentioned in the engineer's and viewers' reports which lies south of a straight line drawn east and west which would intersect the section line between sections 5 and 8 in the township of Whiteford, Marshall County, Minnesota, the market value of the lands included therein will not be increased in the sum found by the viewers as benefits in their report by the construction of this ditch, or any portion thereof, and the court finds as a matter of fact from the evidence and files in this proceeding that as to that portion of this ditch proceeding proposed by the engineer which lies south of said line herein mentioned, the cost of the construction thereof, including the damages awarded, is greater than the benefits to be derived therefrom.''

"It is therefore ordered and adjudged that all that portion of the territory involved in this ditch proceeding which lies south of the line mentioned in paragraph 3 hereof (which is the above paragraph) be dismissed from these proceedings, and that such dismissal be final and complete and it is the intention of this order that the same be a final adjudication as to the territory mentioned in paragraph 3 hereof."

"It is further ordered and adjudged that Judicial Ditch No. 102 be dismissed and at an end."

"That as to the territory lying north of the line between said sections 5 and 8 mentioned in paragraph 3 hereof the Court finds that Thief Lake bottom is fit for agricultural purposes and is in need of drainage; that some of the lands adjacent to said Thief Lake Bottom is in need of drainage and is fit for agricultural purposes; that the present ditch through said Thief Lake bottom is inadequate in size and has become so filled up with dirt that it should be redug and enlarged; that the Court is in doubt as to whether the benefits

to be derived from the construction of the ditch proposed lying north of said line mentioned in paragraph 3 hereof would exceed the cost of the construction of the same, but the court is of the opinion that some method of drainage [sic] a large part of this territory can be found at a cost which would not exceed the benefits, and it is therefore ordered that this ditch matter insofar as it affects the territory lying north of the line mentioned in paragraph 3 hereof be referred back to another engineer with instructions to report to the Court such plan as such engineer may deem practicable, and that a new set of viewers be appointed to make a viewers' report upon such plan as said engineer may report; it being the intention of this paragraph to cover that portion of the territory and to so far as possible follow the plan outlined and suggested in the petition for Judicial Ditch No. 103." ·

"It is the intention of the Court by this order to retain jurisdiction of this ditch proceeding only as to that portion of the territory involved therein which lies north of the line mentioned in paragraph 3 hereof, and as to the balance of said territory this order is a final adjudication."

It is this order which relators bring to this court, and they claim that the trial court erred: (1) In not adopting the modified plan; (2) in finding that the proposed outlet was insufficient and in not giving relief of some kind; (3) in finding that the lands dismissed will not be benefited in the sum found by the viewers, and that the cost of construction of that portion is greater than the benefits to be derived therefrom; (4) in that the court decided the matter before petitioners had fully submitted their evidence, and that the trial court refused to hear them—and that the ex parte order of July 3 and the formal order of July 25 are both void.

The respondents have moved the court to quash the writ of certiorari upon the claim that relators had a right to appeal under that part of section 5577, G. S. 1913, which says: "Any aggrieved party, who claims damages or against whose property benefits are assessed, may appeal," etc. These relators do not claim damages, and, coming from that part of the territory in this project that has been

eliminated by the order of the trial court, they cannot be assessed. This motion is, therefore, denied.

1. The authority for the trial court to modify the plan for the project is given by section 5531, G. S. 1913. Whether this shall be done or not rests in the discretion of the court. Therefore, we cannot say that error was committed by the refusal to receive the evidence relating to the proposed modification.

2. The findings of the trial court as to the insufficient outlet are amply sustained by the record—in fact it was the cost of deepening Thief River for an outlet that seemed to be the great obstacle from the standpoint of many property owners. It is claimed that the court should not have concluded that the project had to stand or fall "in its entirety." He did not so conclude, but did find that the landowners were unable to meet the cost that would have to be imposed in order to carry out the proposed consolidated project "in its entirety." The court was legally required to pass upon the project "in its entirety" and whether he should have given relief of some kind was a matter in his discretion, assuming that the legal prerequisite conditions existed.

3. Ditch proceedings are necessarily somewhat informal, and the court very properly seeks to learn the wish of the people who are to pay for the improvement. The trial court very properly went upon these lands and undoubtedly there gained valuable information relative to the subject matter. He presumably knew this territory well. This enabled him to apply the evidence adduced upon the question of cost and benefits.

Petitioners made the usual proofs as to the costs and benefits. As bearing upon this question the objectors introduced but slight evidence in opposition thereto. The record discloses, however, some figures worthy of consideration which show, in reference to certain townships involved, the following, to-wit:

Yale township, with a population of 49, has an assessed valuation of property of $46,668.00 and now has existing ditch liens in the sum of $44,453.41.

Winner township, with a population of 30, has an assessed valuation of property of $51,480.00 and now has existing ditch liens in the sum of $61,935.31.

Big Grass township, with a population of 108, has an assessed valuation of property of $65,787.00 and now has ditch liens in the sum of $61,115.84.

An unorganized township, with a population of 8, has an assessed valuation of property of $53,981.00 and has existing ditch liens in the sum of $93,604.70.

Another unorganized township, with a population of 1, has an assessed valuation of property of $56,303.00 and existing ditch liens in the sum of $79,445.40.

Norwood township, with a population of 91, has an assessed valuation of property of $62,977.00 and existing ditch liens in the sum of $79,072.23.

Minnie township, with a population of 142, has an assessed valuation of property of $50,910.00 and existing ditch liens of $79,942.00.

Spruce Grove township, with a population of 199, has an assessed valuation of property of $103,455.00 and existing ditch liens of $122,-474.80.

Benville township, with a population of 393, has an assessed valuation of $132,497.00 and existing ditch liens of $76,228.00.

Stevenson township, with a population of 103, has an assessed valuation of $77,916.00 and existing ditch liens of $70,657.67.

Hamre township, with a population of 191, has an assessed valuation of property of $92,712.00 and existing ditch liens of $81,244.50.

Lee township, with a population of 212, has an assessed valuation of property of $122,305.00 and existing ditch liens of $75,019.31.

These ditch liens total $921,231.08 and an assessed valuation of $916,991.00 and a total population of 1527.

Beltrami county has an assessed valuation for taxation purposes of $10,774,811.00 and it has a bonded indebtedness of $3,334,810.00 of which $2,746,310.00 are ditch bonds.

The court refers to the present financial stringency, and that a large portion of the territory is sparsely settled, and far from a railroad, and already heavily taxed, and in determining the amount of benefits necessarily took into consideration the deflation in land values. All these elements are matters of which the court would take judicial notice. Betcher v. Capital Fire Ins. Co. 78 Minn. 240,

80 N. W. 971; Gaffney v. Sederberg, 114 Minn. 319, 131 N. W. 333; Kentucky Iron, Coal & Mnfg. Co. v. Adams (Ky.) 106 S. W. 1198; Hawley v. Von Lanken, 75 Neb. 597, 106 N. W. 456, 23 C. J. § 1993; 1 Dunnell, Minn. Dig. §§ 3451, 3459.

The objectors called as a witness an engineer and if the court saw fit to accept his testimony, as was his privilege, it would necessarily follow that the benefits to result from the proposed project would be materially less than claimed by the petitioners.

The trial court should have considerable latitude in ditch proceedings which are purely statutory and are regulated by laws which are to be construed liberally. There is evidence to sustain the findings of which relators complain.

4. In the oral argument counsel for relators claimed that they had been refused a hearing upon the merits of the original project, and that the court assumed to decide the matter before the matter was submitted for decision, and it was claimed that the relators had been prejudiced thereby. It was asserted that the relators had never rested or concluded their proof.

The record does not justify this assertion. The relators by calling about 15 witnesses covered every phase of the case which they were required to prove and then announced: "That is all the witnesses we have present." Thereupon the objectors began calling their witnesses. Relators made no objection and in no way advised the court that they were not resting their case. Under the circumstances their opponents and the trial court had a right to conclude that relators had rested. The very able counsel for relators well knew that under the rules of procedure they should conclude their proof before their opponent took the laboring oar. Their acquiescence in this procedure does not support their present claims. True, the general rules for the introduction of the evidence must often be applied or relaxed according to the circumstances, and particularly is this true in ditch proceedings. Much is confided to the discretion of the court; but, surely, counsel in this case made no application to the court for permission to offer any additional proofs in support of the original project; and if such was their desire, they should have advised the court of their wishes, and made a specific

offer in reference thereto so that the trial court could have exercised his discretion thereon.

It is apparent that the trial court was not sufficiently advised nor urged that relators desired to be further heard on the original project.

Other assignments of error have been examined and found without merit.

Order affirmed.