Argued February 24; modified April 6; rehearing denied
May 18, 1937

# PROUTY LUMBER & BOX CO. *v.* McGUIRK ET UX.

(66 P. (2d) 481, 68 P. (2d) 473)

*Charles W. Redding*, of Portland, for appellants.

*A. C. Fulton*, of Astoria (G. C. & A. C. Fulton and Frank Spittle, all of Astoria, on the brief), for respondent.

BAILEY, J.  This suit was instituted by the plaintiff, Prouty Lumber & Box Company, against the defendants Walter T. McGuirk and Lenore A. McGuirk, his wife, to foreclose a materialman's lien claimed by the plaintiff against residential property situate at Seaside, Oregon. From a decree in favor of the plaintiff, establishing and foreclosing such a lien, the defendants have appealed.

The plaintiff alleges that it was engaged in the manufacture and sale of lumber, building materials and supplies, during the time mentioned in the complaint, and at the special instance and request of defendant Walter T. McGuirk, who will hereinafter be referred to as "the defendant", delivered to McGuirk lumber,

building materials and supplies to be, and which were, used in the construction and erection of a residence or dwelling house for the defendant at said beach resort. According to the amended complaint as further amended at the trial of the cause, the reasonable value of the materials sold and delivered to defendant was $1,074.50, on which a credit of $130.89 was allowed for materials returned, and a cash payment of $274.50 by defendant was applied, leaving due a balance of $669.11.

The amended complaint further alleges that such materials were furnished and delivered between May 3 and August 12, 1932, and that the last material was delivered on August 12 and on that day the building was fully constructed and completed. The claim of a materialman's lien was filed by plaintiff on September 2, 1932. In addition to asking for the amount alleged to be due for materials furnished, the plaintiff prays for 6 per cent interest thereon from August 12, 1932, $10 for preparing and filing the claim of lien, and $150 as attorneys' fees. Personal judgment against defendant McGuirk is requested. The prayer further contains the usual request for foreclosure of the lien and sale of the property.

The answer admits many of the allegations of the amended complaint, but puts in issue the reasonable value of the materials furnished, the date of completion of the building, the alleged last date of delivery of material by the plaintiff and the averment that the materials were furnished at the special instance and request of defendant.

At the trial the following facts were established: The house here involved was constructed by Claud W. Holmes under a written contract between him and the defendant whereby Holmes agreed to build it according

to plans and specifications and to furnish all materials and labor, for the sum of $2,858.90. This contract designated Walter T. McGuirk as the party of the first part and Holmes as the second party, and provided among other things as follows:

"It is further understood and agreed by and between the parties hereto that all bills for material furnished for said house are to be sent direct to Walter T. McGuirk as the attorney herein and said bills of the party of the first part shall be paid by said Walter T. McGuirk upon bill submitted for material furnished in said house and for labor in connection therewith.

"It being understood and agreed by and between the parties hereto, that at the completion of said contract that said party of the second part shall make a sworn affidavit in favor of the party of the first part that all of the bills in connection with said labor and materials have been furnished to said Walter T. McGuirk and that when said bills as furnished are paid by him that there are no obligations for labor and material against said building or said property.

"It being further understood and agreed by and between the parties hereto that there will be a reduction in the contract price on said building in favor of the party of the first part of any difference in the price of materials furnished over and above the estimate of material upon which this contract has been based and which said estimate is clearly understood by each of the parties hereto as being based upon the figures now in possession of the party of the first part."

This contract was dated May 2, 1932, which was subsequent to the time when Holmes had requested and received estimates from different materialmen as to the price of materials to be used in the construction of the house. There is some evidence to the effect that a Portland concern had made a lower estimate than that of the plaintiff and that the defendant desired that

the offer of the Portland firm be accepted, but due to the business location of the plaintiff at Seaside the order for furnishing materials was given to it. Before the order was accepted by the plaintiff the contract between Holmes and McGuirk was presented to it and plaintiff's attention directed to the provision in the contract as to payment for material by the defendant.

On or about May 3, 1932, the plaintiff commenced to deliver building materials to the defendant's property and on the following day mailed to the defendant at his Portland address a notice that it was delivering, upon the order of Holmes, material which was to be used in the construction of the house, and that the plaintiff might claim a lien against said property for material so furnished.

The evidence amply establishes the fact that the plaintiff did deliver to defendant's property building materials and supplies of the reasonable value above stated; that certain material was returned to the plaintiff, of the value indicated; that the defendant had paid to the plaintiff on account the sum above set forth; and that there was still unpaid on materials so furnished by the plaintiff the sum of $669.11.

■ In our opinion the preponderance of the evidence is to the effect that the last material furnished by the plaintiff to be used, and which was used, in the construction of the building, was delivered prior to August 1, 1932, and that the house was fully completed prior to that date. We reach that conclusion as to the completion of the building from the testimony of several witnesses. An employee of the light company testified that the light meter was placed in the building on August 1 and current first supplied on that day, which was Monday, and that at that time no work was being done

on the building. The date fixed by this witness is corroborated by the company's record. Mr. and Mrs. McGuirk both testified that they took possession of the house on Saturday, July 30, before the electric current was turned on and after the construction work was completed. The contractor, Holmes, testified that the last work which he did on the building was done about the last of July or the first day of August. He fixed the time partly by an occurrence at Clatskanie as he was passing through, on his return to Portland. Other evidence established the date of the incident at Clatskanie as August 1. There was additional evidence to the effect that the contractor had lived in a temporary building on the defendant's property while constructing the house and that he had moved out of it and the place was vacant on the first day of August. Practically the only testimony controverting the foregoing evidence was that of Mr. Moore, who was then, and for some 17 years prior thereto had been, in charge of the "merchandise store" of the plaintiff at Seaside. He testified that Holmes, the contractor, called at plaintiff's place of business at Seaside on August 5 and procured certain material which was used in the building, and that on the following day the witness was at the house and Mr. Holmes was working there. He fixed the time by the date of the invoice for this material. It was shown, however, that two other invoices were not dated at the time the material was delivered.

■ The burden rested upon the plaintiff to prove by a preponderance of the evidence the date of completion of construction of the house, if in furnishing materials it was acting otherwise than as an original contractor; and if as an original contractor, the date of completion of its contract. In view of the facts hereinbefore set out,

we are of the opinion that the house against which a lien is claimed by the plaintiff was fully completed on or before August 1, 1932. Therefore, the notice of claim of lien which was filed on September 2 of that year was not filed within 30 days after the completion of the building.

The plaintiff, however, claims that in furnishing materials it was an original contractor within the meaning of our mechanics' and materialmen's lien law, and especially § 51-105, Oregon Code 1930. That section provides in part as follows:

"It shall be the duty of every original contractor, within sixty days after the completion of his contract, and of every mechanic, artisan, machinist, builder, lumber merchant, laborer, or other person, save the original contractor, claiming the benefit of this act, within thirty days after the completion of the alteration or repair thereof, or after he has ceased to labor thereon from any cause, or after he has ceased to furnish materials therefor, to file with the county clerk of the county in which such building or other improvement, or some part thereof, shall be situated, a claim containing a true statement of his demand . . ."

This court, in attempting to arrive at the meaning of the expression "original contractor" as used by the legislature with reference to mechanics' and materialmen's liens, has in many instances resorted to the language used in § 51-110, Oregon Code 1930, and held that the provisions of that section should be construed in pari materia with those in § 51-105, supra. Section 51-110, supra, reads in part as follows:

"No payment by the owner of the building or structure to any original or subcontractor, made before thirty days from the completion of the building, shall be valid for the purpose of defeating or discharging any lien created by this act in favor of any workman, la-

borer, lumber merchant, or materialman, unless such payment so made by the owner of the building or structure to such original or subcontractor has been distributed among such workmen, laborers, lumber merchants, or materialmen . . ."

■ We are confronted with the question of whether the plaintiff in furnishing the building material which was used in construction of the house on defendant's property was an original contractor within the meaning of that term as used in the mechanics' lien law of this state, especially §§ 51-105 and 51-110, *supra*. The contract for the building of the house was between the defendant and Mr. Holmes. There was no direct contract between the plaintiff and the defendant, unless it can be said that Holmes was acting as the common-law agent of the defendant in purchasing materials for use by Holmes in building the house. In order to constitute a lien claimant an original contractor there must exist or have existed a contract, either express or implied, between such lien claimant and the owner of the property: 18 R. C. L., Mechanics' Liens, § 39; 40 C. J., Mechanics' Liens, § 144; Phillips on Mechanics' Liens, (3d Ed.), § 40; Bloom on Mechanics' Liens and Building Contracts, §§ 46 and 47.

■ There was in the instant case no contract between the plaintiff and the defendant. No obligation rested upon plaintiff to deliver material to the defendant. Holmes was free to place his order for building supplies with any dealer he selected. Regardless of any protest by defendant, he could have canceled any understanding he had with plaintiff and placed his order elsewhere. A breach by the plaintiff of any agreement it had with Holmes to furnish material would not have given the defendant a cause of action against the plaintiff. Plaintiff's dealings were in fact with Holmes, who

was, so far as this particular work was concerned, the original contractor. The fact that the defendant was to pay for the materials did not constitute Holmes his agent, in view of the terms of the contract between defendant and Holmes: *Scales v. First State Bank*, 88 Or. 490, 502 (172 P. 499) ; *Good v. Johnson*, 38 Colo. 440 (88 P. 439, 8 L. R. A. (N. S.) 900) ; *Bellamy v. F. A. Ames Co.*, 140 Ky. 98 (130 S. W. 980) ; *Houghton v. Loma Prieta Lumber Co.*, 152 Cal. 574 (93 P. 377).

Attention has been directed to the giving of notice by the plaintiff to the defendant that plaintiff had commenced to furnish materials and that it might claim a lien. Such notice was unnecessary, if plaintiff dealt directly with the defendant. Moreover, in the notice of claim of lien filed by plaintiff it was stated that 30 days had not elapsed after the completion of the building, the period of time applicable to lien claimants other than original contractors.

It is not here necessary to decide whether the plaintiff, in furnishing materials to be used in the construction of the house but not performing any labor on the premises where the house was built, would have come within the definition of original contractor, had such materials been supplied to the defendant under a contract between him and plaintiff, inasmuch as that question has, by our conclusion, been eliminated from the case.

Since the plaintiff in furnishing the building materials used in the construction of defendant's house at Seaside was not an original contractor within the meaning of that term as used in the mechanics' lien law, and did not file its lien within 30 days from the completion of the building, its right of lien was never so far perfected as to permit a foreclosure of the lien. At the

time of the institution of this proceeding, plaintiff had no lien against the defendant's property which could be foreclosed. Therefore, the circuit court was in error insofar as it attempted in its decree to establish and foreclose such a lien and ordered the property sold to satisfy the same.

■ The contract between the defendant and Holmes expressly provided that the bills for materials used in the construction of the house should be furnished to and paid by the defendant. Before the plaintiff agreed to sell and deliver building materials to be used in the structure it was advised of that provision in the contract. Copies of invoices for materials supplied were mailed to the defendant on or about the dates when the materials were delivered. The defendant testified, however, that he did not believe that he had received copies of all the invoices. On June 25, 1932, the defendant mailed to the plaintiff a check for $274.50 on account. Later, claiming that there was some mistake as to materials which had been returned to the plaintiff, the defendant took up the matter with the plaintiff and an adjustment was effected.

Both the contractor and the defendant testified that the defendant had at first requested the contractor to give a bond to him conditioned that Holmes would pay all the claims for materials furnished and labor performed in the construction of the house. Holmes was unable to furnish such a bond and in consequence the provision as to payment of bills for materials was inserted in the contract.

The wording of the contract and the construction placed upon it by the parties thereto lead us to the conclusion that the said contract was made for the benefit of those furnishing materials used in the con-

struction of the house, and that plaintiff had a right to maintain action thereon against the defendant for the value of materials so furnishhed by it: *Baker v. Elgin,* 11 Or. 333 (8 P. 280); *Hughes v. Oregon Railway and Navigation Company,* 11 Or. 437 (5 P. 206); *Baker City Mercantile Co. v. Idaho Cement Pipe Co.,* 67 Or. 372, 377 (136 P. 23); *The Home v. Selling,* 91 Or. 428 (179 P. 261, 21 A. L. R. 403); *Gaffney v. Sederberg,* 114 Minn. 319 (131 N. W. 333); *Boone County Lumber Co. v. Niedermeyer,* 187 Mo. App. 180 (173 S. W. 57); 2 Williston on Contracts (Rev. Ed.), §§ 361, 362, pp. 1056-1059; 1 Restatement of the Law of Contracts, §§ 136-141, inclusive.

Judgment was entered by the circuit court in favor of the plaintiff and against the defendant Walter T. McGuirk in the sum of $669.11, with interest thereon at the rate of 6 per cent per annum from August 12, 1932. This amount, according to the evidence in the record, is owing by the defendant to the plaintiff, and in consonance with the ruling of this court in the cases of *Van Lydegraf v. Tyler,* 128 Or. 236 (271 P. 740, 273 P. 719), *Brakebush v. Easen,* 126 Or. 1 (267 P. 1035), and *Weith v. Klein,* 136 Or. 201 (298 P. 902), the decree, so far as it provides for judgment against the defendant Walter T. McGuirk for the sum last above specified, is affirmed. So much of the decree as provides for attorneys' fees and cost of preparing and filing the notice of lien claim, and orders foreclosure and sale of the property, is reversed. No costs in this court will be allowed.

BEAN, C. J., and CAMPBELL, J., concur.

RAND, J., dissents.

Petition for rehearing denied May 18, 1937

On Petition for Rehearing
(68 P. (2d) 473)

BAILEY, J. In a petition for rehearing the appellants urge that the decree appealed from should be reversed and a decree entered in their favor. In support of the petition they assert (1) that our original opinion herein ignored the theory upon which the plaintiff tried the case in the circuit court, and (2) that the contract between the defendant, Walter T. McGuirk, and the builder, Holmes, was not made for the benefit of the plaintiff.

■ In our former opinion we referred to and quoted from that contract and held that, in the purchase of materials from the plaintiff, Holmes was not acting as agent for the defendant McGuirk, as contended for by plaintiff, but that the contract itself was made for the benefit of those furnishing materials used in the construction of the house involved in this case. Because we construed the contract differently from plaintiff's interpretation of it and based the defendant's liability for payment for materials used in construction of his house not on agency of Holmes but on defendant's agreement with Holmes to pay for such materials, the appellants seek to be relieved from all liability for materials, as far as the plaintiff is concerned.

This court, in *Commercial Credit Company v. Click,* 127 Or. 130 (271 P. 36), said:

"The case was not tried by the lower court on the theory which we have announced, nor has it been suggested in the briefs of counsel, but the judgment was, in our opinion, the proper determination of the action and, by virtue of Article VII, section 3c, of the constitution of this state, this court has power to affirm it."

In numerous other instances this court has held that the judgment appealed from will be affirmed if correct, regardless of the reasoning by which the trial court reached the decision. Likewise, we have held that in spite of incorrect reasons assigned by the litigant in support of an instruction given by the trial court, if the instruction is nevertheless correct, in view of the pleadings and evidence in the case, the judgment appealed from will not be disturbed. In other words, it is not the function of an appellate court to reverse the judgments of trial courts which are fundamentally correct, although counsel or trial judge may have viewed a particular case in the light of a different theory from that here adopted.

A different question, however, arises where the appellant is attempting to overturn the ruling of the trial court on an entirely different theory from that presented at the trial and the circuit court has not been given opportunity to pass upon the proposition, which is suggested for the first time upon appeal.

The appellants contend that our former opinion incorrectly stated the law in holding that the contract between the builder and McGuirk gave to the plaintiff a right of action against the defendant McGuirk for the value of materials furnished by plaintiff for use in the construction of the house, and in this connection they direct our attention to several Oregon cases, among them *Pankey v. National Surety Company,* 115 Or. 648 (239 P. 808), upon which they principally rely. That case involved the right of a sub-contractor to maintain an action against the surety company on a bond in the penal sum of $25,000, given by the general contractor for the faithful performance of its contract with a railway company. The opinion therein dis-

tinctly pointed out, as a ground for holding that the plaintiff was precluded from maintaining the action, that "there was no promise by the National Surety Company to pay for labor and material used by Nettleton-Bruce-Eschbach Company in the performance of its contract with the railway company." In the case now before us, however, there was an express agreement by McGuirk with the builder to pay for the materials furnished for and used in the construction of the house.

In addition to the authorities cited in our former opinion, see also *Barde v. Portland News Publishing Company*, 152 Or. 77 (52 P. (2d) 194).

We find no merit in the petition for rehearing, and the same is therefore denied.

BEAN, C. J., and CAMPBELL and RAND, JJ., concur.