Argued at Pendleton May 3; modified June 6; rehearing denied
September 26, 1939

# ERICKSON *v.* GRANDE RONDE LUMBER CO.

ET AL.

(92 P. (2d) 170, 94 P. (2d) 139)

Department 1.

*Sidney Teiser,* of Portland (Teiser & Keller, of Portland, and Hallock, Donald & Banta, of Baker, on the brief), for appellant.

*A. A. Smith,* of Baker (Heilner, Smith, Grant & Fuchs, of Baker, on the brief), for respondents.

ROSSMAN, J. This is an appeal by the plaintiff from a judgment in favor of the defendant, Stoddard Lumber Company, entered after a motion for a nonsuit made by that defendant had been sustained, and against the other defendant, Grande Ronde Lumber Company, a dissolved corporation, in an amount less than that sought by the plaintiff. The part of the judgment which is against the Grande Ronde Lumber Company is based upon findings of fact and conclusions of law. The appeal is predicated upon contentions that the nonsuit should not have been allowed, and that the plaintiff was entitled to recover the entire sum he sought.

The plaintiff is an accountant and tax counselor. His complaint avers that he performed services in his professional capacity at the request of the Grande Ronde Lumber Company, and that subsequently the Stoddard Lumber Company entered into a contract with the Grande Ronde Lumber Company whereby it agreed to discharge all of the liabilities of the latter, with the exception of whatever income taxes the Grande Ronde Lumber Company may have incurred prior to

January 1, 1929, and permitted to remain unpaid. The plaintiff claims that the assumption of liabilities included the amount owing to him.

There are three corporations which we shall be required to mention so frequently that we deem it well to identify them at the outset. Two of them are the defendants Stoddard Lumber Company and Grande Ronde Lumber Company. The third is the Nibley-Mimnaugh Lumber Company. From here on we shall omit the word ''Lumber'' as we employ the names of these companies. The Nibley-Mimnaugh Company was dissolved March 7, 1924, and the Grande Ronde Company on December 30, 1933. The Stoddard Company is a going concern. At the times with which we are concerned these three corporations were closely related through the fact that their stock was largely owned by the same individuals. Elmer I. Stoddard, in 1923, was the president of the Nibley-Mimnaugh Company; in 1928 he was president of the Grande Ronde Company and a director in the Stoddard Company. He stated that he and other members of the Stoddard family owned the majority of the stock of both the Nibley-Mimnaugh Company and the Grande Ronde Company. Later the Stoddard Company, by transferring to the stockholders of the Grande Ronde Company 3600 shares of its capital stock, acquired all of the property of the Grande Ronde Company. Concerning the times with which we are concerned, Elmer Stoddard further testified: ''At that time most of the stockholders of the Stoddard Lumber Company were directors of the Grande Ronde and also the Nibley-Mimnaugh Lumber Company, and in one meeting—whatever they did, it would naturally tie up the other.'' The close relationship between the companies was indicated by

Charles H. Mimnaugh, a director in the Nibley-Mimnaugh Company during its existence, when he said, referring to that corporation and the Grande Ronde Company: "You might say there that Elmer Stoddard was president of both companies."

In 1923 the Nibley-Mimnaugh Company sold virtually all of its assets to the Bowman-Hicks Lumber Company for the sum of approximately one million dollars, which, under the terms of the sale, was received by one J. F. Ravenscroft, as trustee for the Nibley-Mimnaugh Company stockholders. There was also transferred to him the remaining assets of the vendor corporation consisting of cash and accounts receivable. The purchase price money received by Ravenscroft from the Bowman-Hicks Lumber Company was distributed by him to the stockholders of the Nibley-Mimnaugh Company. With that money and with the Bowman-Hicks Company we have no further concern. The assets which remained in Ravenscroft's possession, worth about $42,000, were retained by him for the purpose of discharging whatever obligations of the Nibley-Mimnaugh Company remained. March 7, 1924, that corporation was dissolved.

June 30, 1926, the federal commissioner of internal revenue asserted an income tax deficiency against the Nibley-Mimnaugh Company for the years 1917, 1918 and 1919 in the amount of $2,565.16, and on April 7, 1926, the commissioner asserted an income tax deficiency against the same company for the year 1924 in the sum of $48,526.91. The company perfected an appeal from these assessments to the United States board of tax appeals. The appeal was pending January 1, 1928. On the day just mentioned Ravenscroft, acting in obedience to the instructions of the directors of the

dissolved Nibley-Mimnaugh Company, and with the approval of the board of the Grande Ronde Company, transferred to the latter corporation all of the assets of the Nibley-Mimnaugh Company which he still retained. They consisted of $26,986.25 cash and $7,761.62 notes and accounts receivable. We now quote from the findings of fact:

"In consideration of said transfer to the said The Grande Ronde Lumber Company of said cash and notes, The Grande Ronde Lumber Company promised and agreed and assumed to pay the full amount of income taxes which might be held to be valid and collectible as against the Nibley-Mimnaugh Company and to bear the expense of carrying on the tax contests against the United States of America."

When the Grande Ronde Company received these assets it indicated their possession through the entry in its ledger of a liability account entitled Nibley-Mimnaugh Lumber Company Trustee Deposit.

We shall now consider the inception of another phase of this cause. September 21, 1925, the federal commissioner of internal revenue asserted an income tax deficiency against the Grande Ronde Company for the years 1917, 1918 and 1919 in the amount of $25,067.71. March 26, 1926, he asserted a similar deficiency against the same company for the year 1920 in the amount of $35,452.14, and on the same day an income tax deficiency against a wholly owned subsidiary of the Grande Ronde Company in the amount of $2,724.55. Later the Grande Ronde Company and its subsidiary perfected appeals from these asserted tax deficiencies to the United States board of tax appeals. The appeals were pending September 11, 1928.

In 1928 Elmer I. Stoddard, who was president of the Grande Ronde Company, was greatly concerned over an indebtedness owing to his company by the Baker White Pine Lumber Company and the tax claims asserted by the federal government against the Grande Ronde Company and the Nibley-Mimnaugh Company. The latter claim, as we have seen, the Grande Ronde Company had undertaken to defend and to pay, in the event it was sustained. At this juncture Stoddard sent for his brother Howard, who was engaged in the banking business in an eastern city. Howard was secretary of the Grande Ronde Company and treasurer of the Stoddard Company. He was, of course, a director in both corporations. Upon reaching Baker, where these corporations maintained their headquarters, Howard assumed charge of the claims against the Baker White Pine Company. In so doing he secured the assistance of the plaintiff, and, finally, a receiver was appointed for the debtor corporation. In the meantime, Howard gave attention to the tax deficiency claims asserted by the government. In his endeavor to work out a solution of them, Howard, with the acquiescence of the board of directors of the Grande Ronde Company, employed the plaintiff. The employment of the latter concerning the Grande Ronde taxes commenced in September, 1928, and concerning the Nibley-Mimnaugh taxes in January, 1929. The plaintiff swore that for his services he expected reasonable compensation.

We come now to the facts which the plaintiff says indicate that the Stoddard Company agreed to pay for his services. February 21, 1929, being a time subsequent to the plaintiff's employment by the Grande Ronde Company, the board of directors of the Stoddard Company adopted a resolution which authorized the

officers of that corporation to purchase all of the property and assets of the Grande Ronde Company for a consideration of 3600 shares of stock of the Stoddard Company, and, in addition, to assume ''all the liabilities of the said The Grande Ronde Lumber Company, except the liability for income tax incurred prior to January 1st, 1929.'' The offer was transmitted to the Grande Ronde Company in a letter dated March 11, 1929, which, besides mentioning the 3600 shares added: ''It is understood that in addition to the stock to be delivered to you that we are to assume all of the indebtedness of the Grande Ronde Lumber Company, except liability for income tax incurred or accrued prior to January 1st, 1929.'' On the same day the stockholders of the Grande Ronde Company accepted the offer. The transaction was shortly concluded.

We have mentioned the account entitled Nibley-Mimnaugh Lumber Company Trustee Account which the Grande Ronde Company entered upon its books when it took over the remaining assets of the Nibley-Mimnaugh Company and agreed to take care of that concern's income tax deficiency claims. When the Grande Ronde Company was acquired by the Stoddard Company there remained in this account the sum of $16,012.97. Apparently the account had declined, from its previous size to the amount just mentioned through disbursements made to members of the Stoddard family who had executed an undertaking when the federal government placed the Nibley-Mimnaugh income tax claims in jeopardy form. In the Nibley-Mimnaugh tax appeal Elmer Stoddard's mother, who owned 1,000 shares of Grande Ronde stock, and three of her sons, who were also stockholders, had signed the undertaking. The Stoddard Company, at the time

of its acquisition of the Grande Ronde Company, entered upon its books a liability account entitled Nibley-Mimnaugh Lumber Company Trustee Deposit. June 30, 1929, the account was closed and the sum of $14,908.43, then remaining in it, was transferred by the Stoddard Company to its surplus account.

After the services of the plaintiff had been engaged by the Grande Ronde Company he proceeded with his work. Elmer Stoddard, A. A. Smith and Howard Stoddard, all directors of the Stoddard Company, knew that the plaintiff was performing the services for which he is claiming compensation in this action. Mr. Smith, besides being a director, was also secretary of the Stoddard Company and was its attorney. Howard, as we have already stated, was its treasurer. Mr. Smith, whose professional services had been retained in connection with these tax claims, and Howard continuously worked with the plaintiff. Of course, both Mr. Smith and the plaintiff represented the Grande Ronde Company, but, as Elmer Stoddard indicated in his testimony above quoted, the Grande Ronde and the Stoddard Company were so closely related that "whatever they did, it would naturally tie up the other." The language just quoted could not be technically true if indiscriminately applied, but we believe it is fair to assume that through these three men, who were officials of both corporations, the Stoddard Company knew of the plaintiff's employment. At the request of both the Stoddard Company and the Grande Ronde Company, the plaintiff prepared a typewritten analysis of the government's tax claims against the Grande Ronde and the Nibley-Mimnaugh Companies which the officials of both companies inspected. Other instances of like kind, indicating clearly that the officials of the Stod-

dard Company knew of the plaintiff's progress with the work, are mentioned in the evidence.

██ The evidence authorizes a conclusion that the plaintiff's services were valuable, satisfactory and productive of the desired results. The Nibley-Mimnaugh matter was finally determined June 17, 1935, by the board of tax appeals after the matter had been remanded to that body by the circuit court of appeals for the District of Columbia. The Grande Ronde matter had been concluded earlier. October 5, 1935, the plaintiff sent to the two defendant corporations a statement of his services. The complaint avers that the services performed concerning the Nibley-Mimnaugh taxes were reasonably worth $7,500, and that those performed in connection with the Grande Ronde taxes were worth $5,000. The findings of the circuit court found that the services rendered in connection with the Nibley-Mimnaugh taxes were worth $3,073.50, and that those rendered in connection with the Grande Ronde Company taxes were worth $5,000. Judgment was entered against the Grande Ronde Company for the total of those two sums. The Stoddard Company's motion for a nonsuit was allowed at the conclusion of the plaintiff's testimony. Since no appeal has been taken from the judgment based upon the findings, we must assume that the plaintiff's services were worth at least the amounts awarded in the judgment.

█ The first question, suggested by the defendants, which demands an answer is whether the plaintiff's services were included within the exception "except the liability for income tax incurred prior to January 1st, 1929." Both the resolution adopted by the Stoddard Company's board of directors and the offer which the Stoddard Company made to the Grande Ronde

Company excepted the Stoddard Company from the payment of income taxes incurred by the Grande Ronde Company prior to January of 1929. The plaintiff's work concerned income taxes assessed prior to the year just mentioned, but his work certainly cannot be deemed an income tax. Howard Stoddard, treasurer of the defendant company, and A. A. Smith, its secretary and attorney, likewise performed services upon the income tax assessments out of which arose the plaintiff's claim, but the work of these two officials, like the work of the plaintiff, certainly was not in the nature of an income tax. We are satisfied that plaintiff's claim was not included within the above exception.

Next, the defendants argue that the plaintiff's claim does not constitute an indebtedness or a liability within the purview of the assumption agreement. The resolution of the Stoddard Company's board of directors required that corporation to ''assume all the liabilities of the said The Grande Ronde Lumber Company'' and the letter which transmitted the offer said: ''We are to assume all of the indebtedness of The Grande Ronde Company.'' Possibly, the writer of the letter deemed the words ''liabilities'' and ''indebtedness'' synonyms. At the time when the offer was made the plaintiff had only begun his work and no liability in his favor appeared upon the Grande Ronde Company's account books at that time. But, as we have indicated, he had been employed by that company and it had been agreed that he should be paid reasonable compensation for the work in which he was engaged. When he had only well begun his services, his employer (Grande Ronde Company) disposed of all its assets in exchange for stock of the Stoddard Company and, after disposing of the stock, dissolved. After the exchange the officers of

the Stoddard Company, who had adopted the resolution from which we quoted in a preceding line, saw the plaintiff continue to perform his services. We now quote from *West Texas Refining & D. Co. v. Commissioner of Int. Rev.,* 68 F. (2d) 77 (Tenth Circuit):

■ "The general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor. * * *

"To this general rule there are four well recognized exceptions, under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation. (1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts. * * *

"Where the entire consideration for the transfer is stock of the transferee corporation and the stock is delivered to the stockholders of the transferor, or it is contemplated that it will be distributed to them, leaving the transferor corporation without means to respond to its creditors, the transferee corporation is liable for the debts of the transferor. * * *"

For an instance in which the exceptions to the general rule were employed in an income tax case see *Warner Collieries Company of Delaware v. Commissioner of Int. Rev.,* 36 B. T. A. 54.

The pleadings do not attack the transfer to the Stoddard Company as fraudulent, but nevertheless the principles of law of which we have just taken notice are important because they indicate that the plaintiff's services were of direct consequence to the Stoddard Com-

pany. But before deciding we shall take into consideration other matters.

The words "liabilities" and "indebtedness" would be deemed by Dean Goodrich as accordion words: they are capable of expanding and contracting in their connotations. They may mean present, current, future, fixed or contingent debts. Their meaning in each instance must be determined, not by looking in the dictionaries, but by reading the context, reviewing the transaction, and taking note of the subsequent conduct of the parties who used the equivocal words. We may properly consider: (1) the close relationship between the Grande Ronde and the Stoddard Companies; (2) the knowledge possessed by at least three directors of the Stoddard Company, one of whom was treasurer and another of whom was secretary and attorney for that corporation, that the plaintiff was performing these services; (3) the fact that the Stoddard Company, immediately after the plaintiff had commenced the performance of his services, deprived the employer corporation of every item of its assets; (4) the dissolution in 1933 of the Grande Ronde Company which had been closely identified with the Stoddard Company; (5) the fact that the Stoddard Company had received the Nibley-Mimnaugh Lumber Company Trustee Deposit, and that any reduction in the tax would inure to the Stoddard Company's benefit; (6) the circumstance that the Stoddard Company's officials must have known that the federal government, by the use of the principles of law which we quoted from *West Texas Refining & D. Co. v. Commissioner of Int. Rev.,* supra, might have attempted to enforce payment of the tax out of the property which the Stoddard Company received from the Grande Ronde Company; and (7) the fact

that the plaintiff while performing his work sent to the Stoddard Company from time to time statements of expenses which he was incurring, and the fact that these charges were paid by the Stoddard Company. Apparently the Stoddard Company had a special fund which originated with the former Grande Ronde stockholders out of which payment was made; nevertheless, the bills were submitted to it as debtor and its checks were drawn in payment of them.

The above facts convince us that when the Stoddard Company used the words "liabilities" and "indebtedness" it did not limit them to debts then appearing upon the Grande Ronde Company's books, nor to debts owing at that time. The mere fact that the officials of the Stoddard Company knew that the plaintiff was performing the aforementioned services cannot charge the Stoddard Company with payment for the services; but that knowledge, together with the fact that concurrently with the Stoddard Company's acceptance of all of the Grande Ronde Company's assets the former agreed to pay all of the latter's liabilities, is a strong indication that the parties included in the term "liabilities" the indebtedness which was accruing in the plaintiff's favor. We are satisfied that the Stoddard Company included in the words sums which would become due to the plaintiff at the conclusion of his employment.

The Stoddard Company argues that there is no intimation in the contract between the Grande Ronde Company and the Stoddard Company "that said contract was for the benefit of Erickson" and that "where a promisor agrees generally with a promisee that he will discharge promisee's obligations without specify-

ing them, or to whom they are owing, no cause of action arises in favor of a third party who claims the contract was made for his benefit.'' We believe that the controlling principle of law applicable to this case is stated in *Washburn v. Interstate Investment Co.,* 26 Or. 436, 36 P. 533, 38 P. 620:

"Where one person receives a fund or property from another, and instead of paying him therefor is allowed to retain the consideration under an agreement to pay it to the creditors of the other party; or when it is agreed between the parties to the contract, there being a valuable consideration therefor, that the promisor may discharge his debt or liability to the promisee by paying it to some third person, to whom the promisee owes some legal duty or obligation, it would be just and proper that such third party should have the right to maintain an action on the contract in his own name. But this is on the theory that the contract being for his direct benefit the law invests him with a privity in respect thereto by reason of his interest, and the promisor, in performing the contract, is doing nothing more than to discharge his own debt or obligation in accordance with his agreement. In such case the amount which the promisor agrees to pay is his own debt or obligation, which, by an arrangement with the promisee, he is to pay or discharge in a particular manner; and the parties having by their contract thus treated the third party as primarily interested in its performance, they have recognized him as privy in fact to the consideration and contract, and therefore there can be no hardship in allowing him to enforce it by action in his own name, as the parties to the contract contemplated.'' In that case, since no fund had been created, recovery was denied.

In *Baker City M. Co. v. Idaho C. P. Co.,* 67 Or. 372, 136 P. 23, where a fund for the payment of the assumed debts was placed in the promisor's hand, recovery by

the payment-beneficiary was held allowable. The decision stated:

"The law is well settled in this state that where one has received from another some fund or property or thing in consideration of which he has promised to or entered into an undertaking with such other directly and primarily for the benefit of a third person, an action thereon may be maintained by such person though not a party to the transaction: Feldman v. McGuire, 34 Or. 309 (55 Pac. 872); Oregon Mill & Grain Co. v. Kirkpatrick, 66 Or. 21 (133 Pac. 69, 71). The defendant by its contract with the city undertook to pay for the labor, materials and necessary supplies used in the construction of the city pipe-line, and was primarily liable therefor."

In *Haines v. Pacific Bancorporation,* 146 Or. 407, 30 P. (2d) 763, in which the plaintiff sought to charge an alleged promisor who had received no fund, recovery was denied. The decision recognized the rule above mentioned by stating:

"Again, in Pankey v. National Surety Co., 115 Or. 648 (239 P. 808), the court said:

'Whatever may be the rule elsewhere, the law upon this question is settled in this state by Parker v. Jeffery, 26 Or. 186, 37 P. 712, that the rule giving to third parties the benefit of a contract to which they are not parties is limited to those contracts which have for their primary object the benefit of a third person. * * *
"Where," said Mr. Justice Wolverton in Weinhard et al. v. R. R. Thompson Estate Co., 242 Fed. 315, 318, "a person has received from another some fund, property, or thing, in consideration of which he has made a promise or entered into an undertaking with such other, but primarily and directly for the benefit of a third, such third party may maintain an action directly upon such promise or undertaking so made and entered into for his benefit, although not a party to the transac-

tion. 'In such case,' as was said in Feldman v. Mc-
Guire, 34 Or. 309, 55 P. 872, 'the third party acquires
an equitable interest in the property, fund, or thing,
and the law, acting upon the relationship of the parties
and their treatment of the fund, establishes the re-
quisite privity, creates a duty, and implies a promise
which will support the action.' '' ' ''

■ In the present instance, the Grande Ronde Com-
pany transferred to the Stoddard Company funds out of
which it was expected that payment of the assumed
liabilities would be made. We saw that when Ravens-
croft transferred to the Grande Ronde Company the
remaining assets of the Nibley-Mimnaugh Company,
the Grande Ronde Company entered upon its books a
liability account entitled Nibley-Mimnaugh Lumber
Company Trustee Deposit. The purpose of this deposit
was to enable the Grande Ronde Company to pay what-
ever indebtedness of the Nibley-Mimnaugh Company
remained unsatisfied. Later, when the Grande Ronde
Company transferred all of its assets to the Stoddard
Company, the transfer included this deposit, and the
Stoddard Company, in recognition of this fact, entered
upon its books the liability entitled Nibley-Mimnaugh
Lumber Company Trustee Deposit amounting to $16,-
012.97. Still later, when the account was transferred to
the Stoddard Company's surplus account, it held $14,-
908.43; much more than was necessary to discharge the
taxes of the Nibley-Mimnaugh Company as finally sus-
tained and to pay for the plaintiff's services in connec-
tion therewith. Hence, we have concerning that part
of the plaintiff's claim the needed fund. There can
be no doubt that the Stoddard Company received
enough property from the Grande Ronde Company to
discharge all liabilities of that company which had

originated in its (Grande Ronde's) activities. The Stoddard Company, as will be recalled, received every item of property which the Grande Ronde Company, at the time of the transfer, possessed—cash, accounts receivable, equipment, etc. Hence, in both instances the needed funds were placed in the hands of the promisor. Clearly, the decisions from which we have just quoted are sound and indicate that the plaintiff can maintain this action against the Stoddard Company, unless one of the remaining contentions of the defendants possesses merit.

■ In support of their contention that it is necessary that the debt owing and the person to whom payment is to be made must be particularized in order to warrant an action in the beneficiary's name, the defendants cite *Phez Company v. Salem Fruit Union,* 103 Or. 514, 201 P. 222, 205 P. 970, 25 A. L. R. 1090. Possibly some of the language employed in the original opinion in that case, when separated from its context, lends support to the defendants' contention, but the opinion upon rehearing bears no indication of an intention to adopt a rule peculiar to Oregon. To the contrary, it recognizes that when the promisee transfers a fund to the promisor, in consideration of which the latter agrees to discharge the promisee's obligations, the beneficiaries of the transaction may enforce the promise in their own names. We must bear in mind that the Phez Company was not concerned with a promise to pay money, but with an agreement by growers to deliver to a marketing organization berries which the latter had agreed to sell to the plaintiff. The decision held that the plaintiff was entitled to maintain the suit in its own name. The relief sought was negative—an injunction. The decree

of the circuit court, based upon an order sustaining a demurrer to the complaint, was reversed. Of course, the beneficiary or beneficiaries, together with the duty to be performed by the promisor, must be described sufficiently so that both will be ascertainable. It is generally recognized that where a debtor-creditor relationship exists between the promisee and the beneficiaries, a description of the beneficiaries by class is sufficient. From Restatement of the Law, Contracts, § 139, we quote:

"It is not essential to the creation of a right in a donee beneficiary or in a creditor beneficiary that he be identified when a contract containing the promise is made."

See to like effect Williston on Contracts, Rev. Ed., § 378, in which the quotation from the Restatement of the Law of Contracts which we have just quoted is incorporated in the context and is followed by several illustrations taken from the decisions. This rule has found frequent application in this state. For instance, in *Prouty Lumber & Box Co. v. McGuirk,* 156 Or. 418, 66 P. (2d) 481, 68 P. (2d) 473, where the defendant had promised to pay for all the material that entered into the construction of his house, it was held that the plaintiff, a materialman, could enforce compliance with the promise. In *Weinhard v. R. R. Thompson Estate Co.,* 242 Fed. 315, where the promise was to pay the debts of a corporation entitled The Multnomah Hotel Company, Judge Wolverton, formerly a distinguished member of this court, held that the plaintiff, as a creditor, could enforce payment in his own name. In *Feldman v. McGuire,* 34 Or. 309, 55 P. 872, where the promise was

to pay the debts and liabilities of one Adolph Nicolai, the decision held that the plaintiff, a creditor of Nicolai, could maintain the action in his own name.

The antonym of debtor is creditor, and in the present instance when the Stoddard Company agreed to pay the liabilities and indebtedness of the Grande Ronde Company it necessarily made as the beneficiaries of that undertaking the creditors of the Grande Ronde Company. The plaintiff was a member of that class. We are satisfied that the principles of law above mentioned, and which are employed in this state in everyday practice, enable the plaintiff, in his own name, to maintain this action upon that promise.

█ The defendants next argue that it was incumbent upon the plaintiff to have ''accepted the contract made for his benefit within a reasonable time and that by his failure so to do he forfeited his rights under the contract made for his benefit.'' In support of their contention, the defendants cite *Bogart v. George K. Porter*, 193 Cal. 197, 223 P. 959, 31 A. L. R. 1045. The facts in that case were that August 5, 1905, George K. Porter executed and delivered to the plaintiff's assignor the note upon which the action was based. The instrument was payable 18 months from date, that is, March 5, 1907. In 1906 Porter organized the George K. Porter Company, a corporation, to which he transferred all of his assets. He later in that year died, and the corporation assumed the payment of all of his indebtedness. Later the affairs of the corporation became involved, litigation ensued and still later a settlement was effected under which a division of the assets of the corporation was made among its stockholders. In pursuance of this settlement the concern conveyed to one

of the defendants in the suit which we are reviewing and to two of the intervenors therein some of its property. After the division the corporation retained a few items of property which it conveyed September 30, 1911, to another defendant in the action under review, a bank. January 20, 1917, the action was instituted for the purpose of reaching the assets above mentioned. When the action was instituted the statutory period of limitations had expired by more than four years upon the note, upon the assumption thereof by the Porter Company, and upon the implied assumption by the bank. The plaintiff, however, contended that the statutory period did not begin to run until after he had accepted the contract of assumption made by the Porter Company. The portion of the decision upon which the defendants in the instant action rely was employed in disposing of the contention just mentioned. We do not believe that it supports their point of view. But, even if the court in that case meant to hold that a payment-beneficiary cannot maintain an action until he has formally accepted the payment-beneficiary promise, this court has never subscribed to that point of view. For instance, in *Baker and Smith v. Eglin,* 11 Or. 333, 8 P. 280, this court said:

"The assent of the third person, for whose benefit the contract is made, will be presumed."

From *Schneider v. White,* 12 Or. 503, 8 P. 652, we quote:

"That an action can be maintained by A upon a promise made by B upon a consideration moving from C to pay A a sum of money, even though A was not informed thereof until afterwards, is too well settled to require authority to support the proposition."

From 12 Am. Jur., Contracts, p. 841, § 288, we quote:

"No express assent or formal acceptance by the plaintiff is necessary. His assent and acceptance will be presumed."

Page on Contracts, § 2392, states:

"His act in maintaining an action upon such contract is a sufficient assent."

We are satisfied that this contention is without merit.

The above disposes of all of the contentions advanced by the defendants. We have not mentioned each subdivision of their contentions in detail, nor have we discussed all of the authorities which their brief cites; but we have given to all of them careful consideration. We believe that they lack merit.

■ The plaintiff contends that judgment should have been entered in his favor for the entire sum of money which his complaint seeks. He insists that the opinion evidence of his witnesses supports the amount sought by his complaint and that this testimony is not contradicted. We believe, however, that the record contains a contradiction of it. In view of this fact, we cannot disturb the findings which determined the value of his services.

■ In making the above statement of the facts we employed an occasional item of evidence which the circuit court had held inadmissible. The fact was placed in the record, after its rejection, by an offer of proof. In their brief the defendants do not contend that the rejected evidence was inadmissible, but argue that the

bill of exceptions does not contain the rejected fact. We are satisfied that the contention is mistaken, and that the evidence was admissible.

13. The judgment against the Grande Ronde Lumber Company is affirmed. The appeal against the Stoddard Lumber Company attacks a judgment based upon an order of nonsuit. For the reasons stated in *Wallace v. Oregon Engineering Co.*, 90 Or. 31, 174 P. 156, 175 P. 445, the cause will be remanded to the circuit court.

RAND, C. J., and BEAN and BELT, JJ., concur.

---

Petition for rehearing denied September 26, 1939

ON PETITION FOR REHEARING

(94 P. (2d) 139)

ROSSMAN, J. The petition for a rehearing and its accompanying briefs, filed by the two respondents, criticize not only the conclusion announced in our decision but also the facts and legal principles which we employed in reaching it.

In our decision we stated that the capital stock of the Nibley-Mimnaugh Company, the Grande Ronde Company and the Stoddard Company (the latter two being the respondents) was "largely owned by the same individuals." This statement is criticized by the respondents as unsupported by the record. We observe, however, that one of the briefs accompanying the petition for a rehearing states: "It is true that certain members of the board of directors of the Stoddard Lumber Company were also members of the board of directors of the Grande Ronde Company and of the board of directors of the Nibley-Mimnaugh Lumber Company until its dissolution in 1924." That admis-

sion, which is clearly warranted by the record, to some extent substantiates the statement of fact contained in our opinion. The evidence abounds with facts and circumstances, some of which are mentioned in our decision, which indicate that the capital stock of the three corporations to a substantial extent was held by the same group of individuals. We remain satisfied with our original statement. The respondents seem to believe that since we stated that (1) the capital stock of the three corporations was owned to a large extent by the same individuals, and (2) at least three members of the board of directors of the Stoddard Company knew of the plaintiff's employment, we concluded that the Stoddard Company was responsible for the payment of the plaintiff's services. We hope that we shall be spared the humiliation of ever deciding an important issue upon such an insufficient foundation. We have read our opinion again and feel very certain that it contains no intimation of the kind suggested by the respondents. The relationship of the parties to each other is always one of the circumstances which affect them when they choose the language which expresses their agreements and intentions. The surrounding circumstances, while never incorporated in the written instruments, are a valuable aid to anyone who later seeks to ascertain the intention of the parties and the meaning of any ambiguous words found in their writings. This being true, the courts when construing a contract receive testimony concerning the circumstances which surrounded the parties at the time it was written. The relationship between the parties is one of those attendant circumstances. Such was our understanding when we wrote our opinion and we considered the relationship which existed between the

parties purely for the purpose of ascertaining their intentions and construing the offer and acceptance.

We shall take note of only one other criticism which the defendants make of our statement of the facts. They quote the following sentence from our decision: "There can be no doubt that the Stoddard Company received enough property from the Grande Ronde Company to discharge all liabilities of that company which had originated in its (Grande Ronde's) activities." Concerning this statement the respondents' brief accompanying the petition for a rehearing says: "We are unable to find any testimony in the record in support of this statement. There is nothing to show what the assets of the Grande Ronde Lumber Company were which were transferred. * * * The record is utterly void of proof of any of these matters." The answer of the Stoddard Lumber Company states: "At the time the negotiations were carried on between the Grande Ronde Lumber Company and the Stoddard Lumber Company for the purchase by the Stoddard Lumber Company of the assets of the Grande Ronde Lumber Company, numerous conferences were held between the said Grande Ronde Lumber Company and the Stoddard Lumber Company, * * *." From the offer made by the Stoddard Company to and accepted by the Grande Ronde Company which culminated in the sale by the Grande Ronde of all of its assets to the Stoddard Company, we quote:

"The Stoddard Lumber Company does hereby offer to purchase all of your property and assets of every nature and description for thirty-six hundred (3600) shares of the capital stock of this company.

It is understood that in addition to the stock to be delivered to you that we are to assume all of the indebtedness of the Grande Ronde Lumber Company

except liability for income tax incurred or accrued prior to January 1st, 1929. * * *

All real and personal property is to be conveyed by you free and clear of all incumbrances except mortgage on real property in favor of the Title and Trust Company of Portland, Oregon, (mortgage on lumber in favor of Joseph J. Heilner, Trustee), and current taxes. Abstracts of title shall be submitted showing you to be the owner of the property involved in this transaction free and clear of all incumbrances except the mortgage referred to and the current years taxes. The conveyance of the property shall be subject to the mortgages and taxes but shall not recite an assumption of the indebtedness. * * *"

It is true that the evidence does not disclose the value of these assets, but there is much evidence in the record which indicates that the Grande Ronde Company was a going concern engaged in the manufacture of lumber when the transfer was made. No one claims that it was insolvent. It will be remembered that the Stoddard Company gave in consideration for the Grande Ronde assets 3,600 shares of Stoddard Company capital stock and assumed all of the Grande Ronde Company's liabilities, with the exception of the income tax claims mentioned in our preceding decision. This consideration in itself indicates that the Grande Ronde assets must have been worth more than the outstanding liabilities. Moreover, a ledger sheet of the Stoddard Company, which constitutes a part of the record before us, and the respondents' explanation thereof, indicates that the Stoddard Company received or created a fund aggregating over $18,000 for the discharge of the Grande Ronde income tax liabilities. The very fact that income tax deficiencies in very large amounts were being asserted by the federal government against the Grande Ronde Company and were later in large

part sustained, in itself, indicates that the Grande Ronde properties were earning profits and therefore possessed great value. The record does not indicate what, if any, liabilities in addition to the plaintiff's account were unsatisfied when the transfer of assets was made. Hence, it was not necessary that the plaintiff should have shown that the Stoddard Company received properties worth more than the amount of his claim. We believe that these facts show that our statement above quoted is not subject to the criticism which the respondents have offered.

The petition for a rehearing criticizes many of the legal principles which we employed in arriving at our conclusion. We considered these rules carefully before arriving at our opinion. We have analyzed them again, but remain satisfied that in embracing them we did not err. We shall now consider some additional contentions advanced by the respondents.

The petitioners argue that after the Stoddard Company had agreed to pay the Grande Ronde Company's debts, the plaintiff, as a creditor of the Grande Ronde Company, was not entitled to judgment against both of these companies. They insist that he was entitled to a remedy against only one of them, and that it was incumbent upon him to make an election. The respondents argue: "It may even be that so far as the commencement of the action was concerned that he had a right to pursue his remedy against both, but manifestly when the time came for the case to be decided he was not entitled to judgment against both." They argue that since he took judgment against the Grande Ronde Company he made his election and, therefore, cannot have relief against the Stoddard Company. In support of these contentions, the respondents cite: *Wood v.*

*Moriarty*, 15 R. I. 518, 9 Atl. 427; *Bohanan v. Pope*, 42 Me. 93; *Verrill v. Weinstein*, 135 Me. 126, 190 Atl. 634; 13 C. J., p. 705, § 815; and 12 Am. Jur., p. 841, § 288.

The first two of the decisions just cited support the respondents' position. The section of Corpus Juris on which they rely is not concerned with the precise problem with which we are now dealing. It states that the English doctrine which denies to the beneficiary the right to maintain an action against the promisor is not the prevailing rule in the United States. The section of American Jurisprudence upon which they rely is concerned with the problem whether the beneficiary must formally accept the promise made in his behalf by the promisor. The essence of the section is stated in the following words which we quote from it: "By suing on the contract, the beneficiary accepts or adopts the same." Neither of these treatises considers the question of whether judgment may be entered against both the promisor and the promisee. In the Verrill case, the defendant in purchasing a parcel of real property from one Katz signed a note and mortgage which finally came into the ownership of the plaintiff. Before maturity of the note the defendant conveyed her equity in the property to two individuals named Hecht who assumed and agreed to pay the mortgage debt. Thereafter the defendant made no payments upon the note, but payments were made by the Hechts. The question before the court was whether the payments made by the Hechts interrupted the running of the limitation period against the liability of the defendant. The plaintiff argued that the promisor is in effect the agent of the original debtor, and that accordingly his payments interrupt the running of the statutory period against the latter. In rejecting this argu-

ment, the court said: "Such claim misconceives the theory on which the liability of the promisor is based. His obligation is not on the note, not as agent of the mortgagor, but to pay a debt of his own."

We stated that the Bohanan and Wood decisions support the plaintiff's position, but both of them regarded the new promise as the consummation of a novation; and, of course, a novation is the substitution of a new right for an existing obligation. Williston on Contracts, Rev. Ed., § 393, referring to these two decisions, among others, states:

"Courts which hold that the original contract is in effect an offer of novation to the creditor naturally hold that if the creditor accepts the promisor as his debtor he releases the original debtor, and on the other hand, if he elects to sue the original debtor he thereby rejects the proffered novation and cannot afterwards sue the new promisor."

From § 353 of the same treatise, we quote:

"* * * A few states, however, have erroneously resorted to an implied novation theory for enforcement of the creditor beneficiary type of third party contract."

Among the decisions which he states "have erroneously resorted to an implied novation theory" he cites the Bohanan and Wood decisions. In § 393, after the language quoted above, Williston continues:

"The weight of authority, however, in the jurisdictions which allow a creditor beneficiary a direct right against the promisor supports the conclusion that the creditor has rights against both the promisor and the promisee, not merely a choice of rights; being entitled, of course, to but a single satisfaction. And in some states he is allowed to join both as defendants in the same action. He ought to be compelled to do so."

■ From Restatement of the Law, Contracts, § 141, we quote:

"(1) A creditor beneficiary who has an enforceable claim against the promisee can get judgment against either the promisee or the promisor or against each of them on their respective duties to him. Satisfaction in whole or in part of either of these duties, or of judgments thereon, satisfies to that extent the other duty or judgment."

The principle embraced in the Restatement represents the law of this state. From the carefully prepared annotations to § 141, subd. 1, of the Restatement of the Law of Contracts prepared by Professor Charles G. Howard (12 Oregon Law Review 283), we quote:

"Oregon cases are in accord with this section and hold uniformly that there can be but one satisfaction, though both promisor and promisee are liable. Strong v. Kamm & Brown, 13 Or. 172, 9 Pac. 331 (1886); Feldman v. McGuire, 34 Or. 309, 55 Pac. 872 (1899); Miles v. Bowers, 49 Or. 429, 90 Pac. 905 (1907); The Home v. Selling, 91 Or. 428, 179 Pac. 261 (1919)."

We have read the decisions cited by Professor Howard and are satisfied that he correctly stated their essence.

■ We conclude that the plaintiff was entitled to maintain this action against the promisor (the Stoddard Company) as well as against his original debtor (the Grande Ronde Company). He was entitled to judgment against both; however, to only one complete satisfaction.

■ We shall express in this opinion our conclusions in regard to only one other criticism which is made by the respondents of our original decision. All other principles which they criticize are sufficiently developed, we believe, in our original decision. The re-

spondents state: "The relation between promisor and promisee in a contract made for the benefit of a third party is that of principal and surety." They continue: "Principal and surety may not be sued in the same action and where they are, plaintiff must make an election before the case is submitted to jury." In *Feldman v. McGuire,* supra, which received very careful consideration by this court, Mr. Chief Justice WOLVERTON, in disposing of a contention similar to that which the respondents make in the language which we have just quoted from their brief, stated:

"There is much conflict in the authorities, but the decided weight thereof supports the contention that the contract or transaction upon which such an action is based is not within the statute. The reasons urged are that the contract is not one of suretyship, but an original undertaking between the debtor and the promisor, based upon a sufficient consideration, which operates to the benefit of the creditor. The party promising has for his object some benefit or advantage accruing to himself, and on that consideration makes the promise; and this, it is said, distinguishes the transaction as an original undertaking. Furthermore, the promise is not to the creditor, but to the debtor, and is to pay such debtor the amount due him, or the consideration agreed upon, by paying or answering for it to his creditor; and the law implies the contract between the promisor and the creditor because it is incidentally for his benefit, and therefore gives him the right of action."

We are satisfied that this contention is without merit.

We have considered the entire petition for a rehearing and its two accompanying briefs but have found no occasion to depart from our original decision. The petition for a rehearing is denied.

RAND, C. J., and BEAN and BELT, JJ., concur.