Argued and submitted June 13, affirmed November 7, 2007

Floyd DAHLKE,
personal representative of the Estate of
Clarence L. Simons, Deceased,
*Plaintiff-Appellant,*

*v.*

CASCADE ACOUSTICS, INC.,
an Oregon corporation;
Copenhagen, Inc.,
an Oregon corporation,
formerly doing business as
Copenhagen Mechanical Contractors;
J. E. Dunn Northwest, Inc.,
an Oregon corporation,
dba Donald M. Drake Company;
J. F. Shea Company, Inc.,
a foreign corporation;
J. M. Harder Plumbing and Heating, LLC,
an Oregon limited liability corporation;
Rowland Plumbing Co.,
an Oregon corporation;
Metalclad Insulation Corporation,
a foreign corporation,
as successor-in-interest to Pacific Asbestos;
and Metalclad Insulation Corporation of Oregon,
an Oregon corporation,
as successor-in-interest to Pacific Asbestos,
*Defendants below,*

*and*

FMD CORPORATION,
an Oregon corporation,
fka Donald M. Drake Company
and Drake Management Company,
an Oregon corporation,
fka Donald M. Drake Company,
*Defendants-Respondents.*

Clackamas County Circuit Court
CCV0304209; A127280

171 P3d 992

Meagan A. Flynn argued the cause for appellant. With her on the briefs was Preston Bunnell & Flynn, LLP.

Thomas W. Sondag argued the cause for respondents. On the brief were Jeffry S. Garrett and Lane Powell PC. With him on the reply brief were Stephen P. McCarthy and Lane Powell PC.

Before Edmonds, Presiding Judge, and Wollheim and Sercombe, Judges.

EDMONDS, P. J.

.

**EDMONDS, P. J.**

This is a wrongful death action in which plaintiff, the personal representative of decedent's estate, alleges that defendants FMD Corporation and Drake Management Company are responsible for supplying and installing the asbestos-containing materials that caused decedent's fatal lung disease. The trial court granted summary judgment to defendants, and plaintiff appeals. We affirm.

## I. BACKGROUND

We state the relevant facts in the light most favorable to plaintiff. ORCP 47 C. The Donald M. Drake Company was formed in the 1920s and, between 1944 and 1972, operated a construction business under that name. In 1949, the Donald M. Drake Company served as the general contractor for the construction of Binnsmead School. The construction specifications for the school required the general contractor to "furnish all labor and materials required to complete all asphalt tile flooring * * *." The asphalt tile flooring was to be made of non-fading mineral pigments, asbestos, asphalt, and other necessary fiber fillers and blending agents * * *." Decedent, who worked as a custodian for various Portland public schools, worked at Binnsmead in 1978 and 1979.

In 1972, the Donald M. Drake Company changed its name to FMD Corporation (FMD) and sold certain assets related to its construction business to a newly created subsidiary, including the right to use the "Donald M. Drake Company" name. The purpose of the asset sale was to separate the construction operation from fixed assets such as real estate and construction equipment, so that the construction operation could obtain more bonding credit.[1] The newly created Donald M. Drake Company, later known as Drake Management Company (Drake Management), took over responsibility for completing construction jobs in progress and performed all future construction work.

Meanwhile, FMD retained real estate, construction equipment, and the liabilities of the original Donald M.

---

[1] According to Franklin Drake, the "bonding companies didn't like the idea of having fixed assets in their construction company."

Drake Company. Between 1973 and 1986, FMD engaged primarily in the business of equipment leasing and real estate development, while Drake Management engaged in construction operations. The companies had overlapping directors, and FMD held shares in Drake Management. In 1986, FMD was voluntarily dissolved, and the company assets (including shares in Drake Management) passed to the shareholders of FMD.

Fifteen years later, in April 2001, decedent died of mesothelioma. In 2003, plaintiff filed this action against FMD and Drake Management, alleging strict liability and negligence claims based on the theory that decedent's death was caused by exposure to fibers released from asbestos-containing products at Binnsmead School. Plaintiff alleged that FMD, formerly known as the Donald M. Drake Company, was the general contractor for the construction of the school and had supplied and installed the asbestos-containing products. Plaintiff further alleged that Drake Management was liable as "a successor-in-interest to the Donald M. Drake Company * * *."

FMD and Drake Management moved for summary judgment on plaintiff's claims on the grounds that (1) plaintiff failed to bring his claims against FMD within the five-year period for commencing actions against dissolved corporations under *former* ORS 57.630 (1985), *repealed by* Or Laws 1987, ch 52, § 181; (2) Drake Management is not a successor to FMD and cannot be liable as such; (3) plaintiff's claims against both defendants are barred by Oregon's 10-year statutes of ultimate repose, ORS 12.115[2] and ORS 12.135(1);[3] and (4) defendants are not subject to liability

---

[2] ORS 12.115(1) provides that, "[i]n no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of."

[3] ORS 12.135(1) provides that

"[a]n action against a person, whether in contract, tort or otherwise, arising from such person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof, or from such person having furnished the design, planning, surveying, architectural or engineering services for such improvement, shall be commenced within the applicable period of limitation otherwise established by law; but in any event such action shall be commenced within 10 years from substantial completion or abandonment of such construction, alteration or repair of the improvement to real property."

under Oregon's product liability statutes because they were not manufacturers, distributors, sellers, or lessors of a product. The trial court granted defendants' motions on a number of those grounds:

> "[FMD] was dissolved in 1986. It became at that time subject to a five-year period of time during which claims against that entity could be made, and this claim obviously falls considerably outside of that period of time.

> "And so it's—FMD is not susceptible to suit at this juncture.

> "[Drake Managment] acquired assets, did not aquire the—any obligations or liabilities in the assets sale that took place in 1973.

> "[Drake Management] is—does not fit within the—at least the Oregon analysis of the successor corporation, and that would carry with it continuing liability on the part of the second corporation derivative of some existing liability that may have fallen from the first entity. So there is no liability on the part of Drake Management Company.

> "Lastly, neither one of these corporations is subject to the products liability statute of limitations. It is, in fact, subject to the ten-year statute of ultimate repose. Neither of these entities was involved.

> "The evidence is clear, at least in my view, neither of these companies or entities was a manufacturer, distributor, seller or lessor of a product for purposes of product liability responsibility."

Accordingly, the trial court entered judgment in favor of FMD and Drake Management. Plaintiff appeals.

## II.  ANALYSIS

### A.  *Claims against FMD*

In his first assignment of error, plaintiff contends that the trial court erred in granting summary judgment in favor of FMD. According to plaintiff, his claims against FMD, a dissolved corporation, are not barred by *former* ORS 57.630 but instead survive under the "trust fund doctrine." That doctrine, plaintiff argues, allows him to satisfy the debts of FMD

through assets that were distributed to its shareholders upon dissolution.

*Former* ORS 57.630 provided, in part:

"(1) *The dissolution of a corporation shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution, if action or other proceeding thereon is commenced within five years after the date of issuance of a certificate of dissolution or filing of a decree of dissolution.* Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim. If such corporation was dissolved by the expiration of its period of duration, such corporation may amend its articles of incorporation at any time during such period of five years so as to extend its period of duration."[4]

(Emphasis added.)

Plaintiff contends that *former* ORS 57.630 bars only those claims that were "existing" at the time of dissolution. He argues that, because any potential liability for decedent's mesothelioma and death did not arise until after 1986, the claims against FMD were not "existing" at the time of its dissolution.

■  At common law, all actions by or against a corporation were extinguished upon the dissolution of the corporation. *See* Jennifer L. Berger and Carol A. Jones, 16A *Fletcher Cyclopedia of the Law of Private Corporations* § 8142 (2003 rev ed) ("At common law, a dissolved corporation ceased to exist and could not sue or be sued in its name."). *Former* ORS 57.630 and its predecessor statutes were "evidently designed to remedy the harshness of the common-law rule abating every action and destroying all rights of recovery on behalf of

---

[4] In 1987, the legislature repealed ORS 57.630 and enacted a new set of statutes, ORS 60.637 to 60.644, to govern claims against dissolved corporations. Or Laws 1987, ch 52. By their terms, those new statutes govern only corporations that were in existence on June 15, 1987. Or Laws 1987, ch 52, §§ 176, 178, and 183.

a corporation the moment it became dissolved." *Service L. Co. v. Sumpter Valley Ry. Co.*, 81 Or 32, 43, 152 P 262 (1915); *see also Canadian Ace Brewing v. Joseph Schlitz Brewing Co.*, 629 F2d 1183, 1185 (7th Cir 1980) ("Today, * * * the harshness of the common law on creditors and shareholders has been replaced in every state by statutes which extend the corporate life for a definite time for the purpose of prosecuting and defending suits."). That is, the right to bring an action against a dissolved corporation is one that is provided by the legislature, not by common law.

The question, then, is not simply whether the legislature has *barred* plaintiff's action under *former* ORS 57.630. The question is whether the legislature has given plaintiff a remedy against FMD that otherwise would not exist at common law. *Former* ORS 57.630 provides a remedy against a dissolved corporation for "any right or claim existing * * * prior to such dissolution" so long as the action is commenced within five years after the date of issuance of a certificate of dissolution or filing of a decree of dissolution. Here, plaintiff's claim is not cognizable under the common law, and it does not come within the scope of the statutory exception to the common-law rule. Either plaintiff's claim existed prior to dissolution of FMD in 1986 and was not brought within five years of the dissolution, or the claim did not accrue until after the corporation was dissolved.

Nonetheless, plaintiff contends that, under the trust fund doctrine, "claims against a dissolved corporation can be satisfied through assets distributed to stockholders upon dissolution. *Wakeman v. Paulson*, 257 Or 542, 546, 480 P2d 434 (1971)." The trust fund doctrine, however, does not provide a substantive basis for a claim against a dissolved corporation. The doctrine has been recognized in Oregon to prevent the situation in which "directors of [a company] place themselves in an advantageous position as creditors and defeat the judgment of [a] plaintiff, merely because of the position which they held as officers of the [c]ompany at a time when they knew that the [c]ompany could not pay all of its creditors." *Gantenbein v. Bowles et al.*, 103 Or 277, 295, 203 P 614

(1922). It provides a remedy for *existing creditors of a corporation*, by allowing those creditors to pursue assets of the corporation that have been distributed to shareholders.[5]

*Wakeman*, the case relied on by plaintiff, is illustrative. In that case, the plaintiff brought an action against a dissolved corporation and the corporation's majority shareholder. The trial court entered judgment against the corporation and against the shareholder individually. The Supreme Court reversed the judgment against the shareholder on the ground that a judgment against the corporation could have been satisfied out of assets distributed to shareholders:

> "Assuming, but not deciding, that the hardship caused by an uncollectible corporate judgment is a valid reason for disregarding the corporate entity, we disagree with the trial court's conclusion because its premise is in error. Claims against a dissolved corporation survive. ORS 57.630(1). More important, a creditor of a corporation can satisfy his claim against the corporation out of the assets distributed to stockholders upon dissolution. Lattin, Corporations, 565 (1959); 16A Fletcher, Private Corporations (perm ed), 286, § 8127, n 27; Ballantine, Corporations, 732-733 (1946). The assets of this corporation which were distributed upon dissolution had substantial value."

*Wakeman*, 257 Or at 546-47. Thus, in *Wakeman*, the claim against the corporation was authorized by *former* ORS 57.630(1), not the trust fund doctrine.

The trust fund doctrine operates to provide a remedy for recovery on a claim that otherwise would have been legally cognizable against the dissolved corporation. Because plaintiff does not have an otherwise legally cognizable claim against FMD, the trial court did not err in granting summary judgment on plaintiff's claim against FMD.[6]

---

[5] To avoid any confusion, we note that a "trust fund doctrine" also exists, with an entirely different meaning, in the context of charitable organizations. *See, e.g.*, *Landgraver v. Emanuel Lutheran*, 203 Or 489, 280 P2d 301 (1955).

[6] Because we affirm on this ground, we need not address the trial court's application of the 10-year statute of ultimate repose as to claims against FMD.

## B.  *Claims against Drake Management*

In his second assignment of error, plaintiff contends that the trial court erred in granting summary judgment in favor of Drake Management. Initially, plaintiff reprises his arguments regarding the trust fund doctrine, arguing that Drake Management "was an asset of [FMD] that was distributed to shareholder[s] at dissolution and is considered to have been held in trust—to the extent of its value in 1986—to satisfy plaintiff's claim arising out of the actions of [FMD]."[7] Plaintiff's reliance on the trust fund doctrine is unavailing in this context. Unless plaintiff can establish a claim against FMD—*i.e.*, become a creditor of FMD—the trust fund doctrine provides no basis for pursuing FMD's distributed assets. But, as discussed above, a claim against FMD is not available.

Plaintiff next argues that Drake Management should be held liable as a "successor" to FMD. Plaintiff relies on *Erickson v. Grande Ronde Lbr. Co.*, 162 Or 556, 568, 92 P2d 170, *reh'g den*, 162 Or 556 (1939), in which the court stated:

" 'The general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor. * * *

" 'To his general rule there are four well recognized exceptions, under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation. (1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts. * * *

" 'Where the entire consideration for the transfer is stock of the transferee corporation and the stock is delivered to the stockholders of the transferor, or it is contemplated that it will be distributed to them, leaving the transferor corporation without means to respond to its creditors,

---

[7] Plaintiff has not named the shareholders of FMD as defendants.

the transferee corporation is liable for the debts of the transferor. * * *' "

(Quoting *West Texas Refining & D. Co. v. Commissioner of Int. Rev.*, 68 F2d 77, 81 (10th Cir 1933).)

■ Plaintiff argues that, under the third exception quoted in *Erickson,* Drake Management is liable for FMD's debts because Drake Management "is merely a continuation of" FMD. There are a number of problems with that theory. Most notably, Drake Management did not purchase *all* of FMD's assets. Rather, FMD was left with significant assets and continued to operate as a separate corporation for more than a decade. Plaintiff's theory that Drake Management was simply a continuation of FMD ignores the separate legal existence of the two corporations and disregards the legislative policy that corporations are distinct legal entities. *See* ORS ch 60 (governing corporations). Additionally, there is no evidence that the corporate forms were improperly manipulated or that the transfer of assets to Drake Management left FMD insolvent or otherwise unable to answer for its debts; in the absence of such evidence, we will not disregard the separate corporate identities of Drake Management and FMD that existed and operated for more than a decade after the asset transfer.

Plaintiff further argues that, even if Drake Management is not "merely a continuation" of FMD under existing Oregon case law, this court should "follow the lead of other jurisdictions that have modified the traditional rules of successor liability to accommodate the special issues raised by liability for defective products." Plaintiff relies on a number of cases from other jurisdictions in which courts have concluded that, where a successor company continues to produce the same type of product as the original company, the successor, having received the benefits of a going concern, should also assume the costs which all other going concerns must ordinarily bear. *See, e.g., Cyr v. B. Offen & Co., Inc.,* 501 F2d 1145 (1st Cir 1974); *Shannon v. Samuel Langsdon Co.,* 379 F Supp 797 (WD Mich 1974); *Wilson v. Fare Well Corp.,* 140 NJ Super 476, 356 A2d 458 (1976).

In *Tyree Oil, Inc. v. BOLI*, 168 Or App 278, 282, 7 P3d 571 (2000), we explained that, apart from the four exceptions identified in *Erickson*, "[i]t has long been the general rule in Oregon that, when one corporation purchases all of the assets of another corporation, the purchasing corporation does *not* become liable for the debts and liabilities of the selling corporation." (Emphasis in original.) Plaintiff's proposed modification of successor liability would require us to depart from that established rule. Moreover, liability for defective products—asbestos-related products, in particular—is a subject that the legislature has addressed by statute. *See* ORS 30.900 to 30.927. If we were to expand successor liability in this particular area of the common law, we risk potential conflict with the policies expressed by the legislature in that regard. And finally, even if plaintiff's proposed modification of the common-law rules of successor liability were appropriate in a particular product liability case, plaintiff has not directed us to any evidence in the record that Drake Management continued to manufacture any products that were previously manufactured by FMD, let alone any evidence that Drake Management continued to manufacture the asbestos-containing product that allegedly injured plaintiff. Thus, any reason for following the lead of other states in modifying the common-law rule in Oregon is not supported by the evidence in this case. For all these reasons, the trial court did not err in granting summary judgment to Drake Management.[8]

Affirmed.

---

[8] As noted above with respect to plaintiff's claims against FMD, 216 Or App at 35 n 6, we do not reach the trial court's alternative reasoning regarding the statute of ultimate repose as to claims against Drake Management.