Argued and submitted March 10, affirmed April 15, petition for review denied
August 20, 2015 (357 Or 640)

Hugo P. GONZALEZ,
*Plaintiff-Appellant,*

*v.*

STANDARD TOOLS AND EQUIPMENT CO.,
dba Eagle Equipment;
and Eagle Equipment Co.,
*Defendants-Respondents,*

*and*

EAGLE LIFT MANUFACTURING CORP.;
and Portland Service Station Supply, Inc.,
*Defendants.*

Multnomah County Circuit Court
130100751; A156152

348 P3d 293

J. Randolph Pickett argued the cause for appellant. With him on the opening brief were R. Brendan Dummigan, Kristen W. McCall, Kimberly O. Weingart, and Pickett Dummigan LLP. With them on the reply brief was Ron K. Cheng.

Ralph C. Spooner argued the cause for respondents. With him on the brief were Melissa J. Ward and Spooner & Much, P.C.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Plaintiff appeals the trial court's judgment dismissing his claims with prejudice. He asserts that the trial court erred in its conclusion that "Oregon appellate courts would not be likely to adopt the product line exception to the general rules of successor liability." As explained below, we affirm.

Plaintiff was injured while working at B & R Auto Wrecking (B & R) on an automobile secured by an automotive lift manufactured by Eagle Lift Manufacturing Corp. (Eagle Lift), and sold to B & R in 1998. Plaintiff brought claims for his injuries against several defendants, including Standard Tools and Equipment Co. (Standard Tools) and Eagle Equipment Co. (Eagle Equipment), who were successor entities to Eagle Lift (collectively, the Standard Tools defendants). In particular, in 2005, Eagle Lift's successor entity, Minuteman Distributors, Inc., sold its assets to Eagle Equipment, which, later, merged with Standard Tools, who continued to distribute the automotive lifts.

Plaintiff alleged that,

"[b]y carrying on the product line of Eagle automotive lifts after May 25, 2005, [the Standard Tools defendants] are liable for the injuries suffered by plaintiff, even though those entities did not manufacture, distribute, or sell the automotive lift that injured plaintiff, because they carried on the same product line under the same or similar name ('Eagle Lift'), and benefitted from the good will of Minuteman, which had become a mere corporate shell after substantially all of its assets had been purchased by defendant Eagle Equipment Co., and Minuteman had assigned its remaining assets for the benefit of creditors."

The Standard Tools defendants moved to dismiss plaintiff's claims against them, asserting that Oregon follows the traditional rule of successor liability under which, where one corporation transfers its assets to another, the latter does not assume the liabilities of the transferor corporation, with four specific exceptions. The Standard Tools defendants asserted that Oregon had not adopted the "product line exception" alleged in plaintiff's complaint, and was unlikely to do so. The trial court agreed, concluding that

"the product line exception to the successor liability rule had not been expressly adopted by the Oregon appellate courts or enacted into law by the Oregon legislature[.]" Accordingly, the court entered a judgment dismissing with prejudice plaintiff's claims against the Standard Tools defendants.

On appeal, plaintiff asserts that the "trial court erred in granting the Standard Tools defendants' ORCP 21A(8) Motion to Dismiss on the basis that Oregon appellate courts would not be likely to adopt the product line exception to the general rules of successor liability."

> "'The general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor. * * *
>
> "'To this general rule there are four well recognized exceptions, under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation. (1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts.'"

*Erickson v. Grande Ronde Lbr. Co.*, 162 Or 556, 568, 92 P2d 170, *reh'g den*, 162 Or 556, 94 P2d 139 (1939) (quoting *West Texas Refining & D. Co. v. Commissioner of Int. Rev.*, 68 F2d 77, 81 (10th Cir 1933)) (omission in *Erickson*). Plaintiff asserts, however, that a "number of courts from around the country have adopted a fifth exception to the general rule of successor liability, one known as the 'product line' exception." Under that proposed exception to the general rule, where a successor company continues to produce the same type of product as the original company, the successor assumes tort liability for defects in units of the same product line previously manufactured. According to plaintiff, "the public policy underlying products liability law would be well served by extending the 'product line' exception to this case, consistent with Oregon's policy to protect consumers injured by defective products."

We have previously considered a proposal that we adopt the "product line exception" in *Dahlke v. Cascade Acoustics, Inc.*, 216 Or App 27, 171 P3d 992 (2007), *rev den*, 344 Or 401 (2008). In that case, the plaintiff asserted that we should follow the lead of other jurisdictions that had modified the traditional rules of successor liability and concluded that, "where a successor company continues to produce the same type of product as the original company, the successor, having received the benefits of a going concern, should also assume the costs which all other going concerns must ordinarily bear." *Id.* at 37.

> "In *Tyree Oil, Inc. v. BOLI*, 168 Or App 278, 282, 7 P3d 571 (2000), we explained that, apart from the four exceptions identified in *Erickson*, '[i]t has long been the general rule in Oregon that, when one corporation purchases all of the assets of another corporation, the purchasing corporation does *not* become liable for the debts and liabilities of the selling corporation.' (Emphasis in original.) Plaintiff's proposed modification of successor liability would require us to depart from that established rule. Moreover, liability for defective products—asbestos-related products, in particular—is a subject that the legislature has addressed by statute. *See* ORS 30.900 to 30.927. If we were to expand successor liability in this particular area of the common law, we risk potential conflict with the policies expressed by the legislature in that regard."

*Dahlke*, 216 Or App at 38 (brackets in *Dahlke*). However, that reasoning in *Dahlke* was *dictum* because we went on to conclude that, "even if [the] plaintiff's proposed modification of the common-law rules of successor liability were appropriate in a particular product liability case," "any reason for following the lead of other states in modifying the common-law rule in Oregon [was] not supported by the evidence" presented in the case. *Id.*

Here, we adhere to the reasoning set forth in the *Dahlke dictum* and, accordingly, reject plaintiff's contention that we should adopt the "product line" exception to the traditional rules of successor liability. That is to say, plaintiff's proposed modification of successor liability would require us to depart from the long-established rule and would "risk potential conflict with the policies expressed by

the legislature" with regard to products liability. *Id*. Thus, we reject plaintiff's contention and conclude that the trial court did not err in granting the Standard Tools defendants' motion to dismiss.

Affirmed.