**Eugene ALICKI, Personal Representative of the Estate of Darrell Dean Haynes, Plaintiff,**

v.

**INTRATEC USA, INC., a Florida corporation, formerly known as Intratec, Inc.; and Navegar, Inc., a Florida corporation, dba Intratec, Defendants.**

**Civ. No. 88–1084–FR.**

United States District Court, D. Oregon.

Aug. 1, 1991.

Michael A. Lehner, Lehner, Mitchell & Rodrigues, Portland, Or., for plaintiff.

Paul R. Xochihua, Hallmark, Keating & Abbott, P.C., Portland, Or., for defendants.

## OPINION

FRYE, District Judge:

The matter before the court is the motion for summary judgment (# 53) of defendant Navegar, Inc. (Navegar).

## UNDISPUTED FACTS

In the early 1980's, Carlos Garcia formed a corporation known as Intradynamics of America (Intradynamics), for the purpose of manufacturing guns.

In 1984, Miguel Garcia, the father of Carlos Garcia, formed Intratec USA, Inc. (Intratec) for the purpose of purchasing the assets of Intradynamics from his son, Carlos Garcia. After Intratec purchased the assets of Intradynamics, including gun designs, Intratec manufactured and marketed a handgun known as Intratec–9, which was similar to a handgun known as KG–9 which

had been manufactured and marketed by Intradynamics.

Miguel Garcia was the president of Intratec. After he sold the assets of Intradynamics to Intratec, Carlos Garcia provided technical advice to Intratec. Carlos Garcia has described himself as the general manager of Intratec.

On January 20, 1987, Darrell Dean Haynes died from a wound inflicted by a handgun, an Intratec-9, which had been manufactured and sold by Intratec.

On November 18, 1987, Carlos Garcia incorporated Navegar for the purpose of buying Intratec from his father. The incorporation of Navegar is a matter of public record and has never been concealed.

In March, 1988, Navegar purchased almost all of the assets of Intratec. The purchase was formalized in an "Agreement for Sale and Purchase," in which the parties agreed that Navegar was not purchasing or assuming any debt or obligation of Intratec. Paragraph 4F of the Agreement for Sale and Purchase provides:

> Seller covenants, warrants and represents that debts and obligations of Seller to Seller's creditors have been paid and will continue to be paid in the ordinary course of Seller's business and agrees that Buyer is not, pursuant to this Agreement, undertaking or assuming any obligation to pay any debt or obligation of Seller; except that any debt or claim that may be disclosed to Buyer pursuant to the provisions of paragraph 3 shall be paid on the Closing Date from the closing proceeds. Seller hereby agrees to indemnify and hold harmless Buyer from any and all claims, costs and expenses, including but not limited to attorney's fees, incurred by Buyer in connection with any such claim, as well as any other liability or damage, which may be incurred or suffered by Buyer as a result of any claims made against Buyer by any creditor of Seller or as a result of any breach or misrepresentation by Seller in connection with any of the terms, covenants and conditions of this Agreement.

Exhibit A to Navegar's Motion for Summary Judgment, pp. 2–3.

At the time that Navegar purchased almost all of the assets of Intratec, Intratec was losing money and Miguel Garcia was considering retirement. Carlos Garcia believed that there was a potential for profit if Navegar could expand the product line of Intratec and could advertise in industry journals and publications. Carlos Garcia incorporated Navegar because he wanted to purchase the assets of Intratec and did not want to become responsible for the debts and liabilities of Intratec.

After purchasing almost all of the assets of Intratec, Navegar continued to produce a handgun similar to the Intratec-9 produced by Intratec, which the plaintiff claims caused the death of his decedent. Navegar also manufactures handguns not previously made or sold by Intratec.

The officers, directors and shareholders of Navegar have never been officers, directors or shareholders of Intratec. After Navegar purchased almost all of the assets of Intratec, some of the non-managerial employees of Intratec went to work for Navegar. The manufacturing plant of Navegar was in a location different from the location of Intratec, but both were in the same industrial park.

Navegar does not use the name "Navegar" in any of its advertisements. It conducts business as "Intratec."

On September 21, 1988, the plaintiff, Eugene Alicki, Personal Representative of the Estate of Darrell Dean Haynes, filed the complaint in this action against a single defendant, Intratec. Alicki alleged that Intratec was liable for the death of Haynes and served the complaint on Intratec on or about November 4, 1988.

Carlos Garcia first learned of the existence of the lawsuit in a conversation with his father, Miguel Garcia, sometime after the complaint was served on Intratec, which was at least eight months after the assets of Intratec were transferred to Navegar.

On June 7, 1989, Intratec filed a petition in bankruptcy. On September 25, 1989, the

court entered an order of dismissal without prejudice in this case on the grounds that Intratec had filed a petition in bankruptcy.

On May 11, 1990, Alicki moved the court to reopen the action and to allow her to file an amended complaint adding Navegar as a defendant. The court granted the motion, and Alicki filed an amended complaint. Navegar was served with the amended complaint on May 11, 1989. Navegar subsequently filed a motion to dismiss the amended complaint against it on the grounds that the amended complaint failed to state a claim. This court granted the motion to dismiss but allowed the filing of a second amended complaint on October 4, 1990.

Navegar now moves the court for judgment in its favor on the grounds that 1) the amended complaint which added Navegar as a defendant was not filed within the three-year statute of limitations period applicable to the Oregon Wrongful Death Act; and 2) there are insufficient facts in the record to support Alicki's theory that Navegar, as the successor to Intratec, is liable for the acts of Intratec.

## CONTENTIONS OF THE PARTIES

Navegar contends that Alicki's wrongful death action was not timely filed as to it. Navegar explains that it was served with Alicki's complaint on May 11, 1990, more than three years after the death of Darrell Dean Haynes on January 20, 1987. Navegar argues that neither the "discovery rule" nor the doctrine of "relation back" brings Alicki's complaint within the three-year statute of limitations set forth in O.R.S. 30.020(1).

Assuming that the complaint was timely filed against it, Navegar contends that the undisputed facts in the record preclude any finding of successor liability against it.

Alicki contends that the amended pleadings relate back to the date of the filing of the original pleadings because there is an identity of interests between Intratec, the party originally named in the complaint, and Navegar, the party substituted in the amended complaint. Alicki asserts that Navegar has a sufficient identity of interests with Intratec to allow application of the relation back doctrine.

Alicki contends that the evidence is sufficient to permit a trier of fact to conclude that Navegar is a continuation of Intratec and therefore an exception to the general rule that a successor corporation may not be held liable for the debts of a predecessor corporation. Alicki relies upon the following facts: 1) Navegar purchased all of the assets of Intratec, except some scrap, and Intratec went out of business shortly thereafter; 2) Navegar continued to make a gun identical to the gun which is the subject of this lawsuit; continued to employ some of the employees of Intratec; and conducts its operations in the same industrial park as Intratec conducted its operations; 3) Navegar's advertising is the same as the advertising of Intratec; and 4) Carlos Garcia and Miguel Garcia are father and son and have worked together for a number of years.

## APPLICABLE STANDARD

■ Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact.

■ Once the initial burden of the moving party is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The non-moving party must make a sufficient showing on all essential elements of the case with respect to which the non-moving party has the burden of proof. *Id.*

■ The decision faced by the court is essentially the same as the decision faced in a directed verdict motion—that is, whether the evidence presents a sufficient disagreement to require submission to a jury as to whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91

L.Ed.2d 202 (1986). If reasonable minds could differ as to the conclusions drawn from the evidence in the record, the motion for summary judgment should be denied. *Id.*

## ANALYSIS AND RULING

The three-year statute of limitations contained in O.R.S. 30.020(1) applies to this wrongful death action. Navegar was served with a copy of the amended complaint filed by Alicki on May 11, 1990, more than three years after the death of Darrell Dean Haynes on January 20, 1987. Therefore, the amended complaint was not timely filed against Navegar. However, Rule 15(c) of the Federal Rules of Civil Procedure provides, in part, that:

An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Alicki contends that notice to Intratec of the action is notice to Navegar of the action because Navegar is a mere continuation of Intratec. Alicki argues that since Intratec and Navegar are so closely related in their business operations, the institution of litigation against one serves to provide notice of the litigation to the other. See Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 1499, p. 147 (1990).

Alicki's argument that there is an identity of interests between Intratec and Navegar leads to the second issue presented in this motion for summary judgment—which is, whether reasonable minds could conclude from the undisputed facts in this case that Navegar is merely a continuation of Intratec.

The Oregon courts have followed the traditional rule regarding successor liability, which is stated in *Erickson v. Grande Ronde Lumber Co.*, 162 Or. 556, 92 P.2d 170, 94 P.2d 139 (1939):

"The general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor. * * *

"To this general rule there are four well recognized exceptions, under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation. (1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts."

*Id.* at 568, 92 P.2d 170 (quoting *West Texas Ref. & Dev. Co. v. Commissioner*, 68 F.2d 77 (10th Cir.1933)).

A successor corporation is merely a continuation of the predecessor corporation, despite a business transformation, if it is substantially the same as the predecessor corporation. In *Estey & Assocs., Inc. v. McCulloch Corp.*, 663 F.Supp. 167, (D.Or.1986), the court explained:

The theory of the exception is that if a corporation goes through a mere change of *form* without substantial change in *substance*, then it should not be allowed to thereby avoid liability. Thus, *Groover v. West Coast Shipping Co., Inc.*, 479 F.Supp. 950, 951 (S.D.N.Y.1979):

In general, a corporation that purchases the assets of another corporation does not assume the liabilities of the selling corporation ...

However, plaintiff has sought to invoke the exception to this general rule of nonliability that a purchasing corporation will be held liable for the liabilities of a selling corporation if 'the successor corporation is a mere continuation of the seller.' *Ladjevardian v.*

*Laidlaw–Coggeshall, Inc.,* 431 F.Supp. 834, 839 (S.D.N.Y.1977). In *Ladjevardian,* the court stated, 'A continuation envisions a common identify [sic] of directors, stockholders and the existence of only one corporation at the completion of the transfer. [Citation omitted]. What it accomplishes is something in the nature of a corporate reorganization, rather than a mere sale.'

*Id.* at 171 (emphasis in original).

█ The undisputed facts here are that Carlos Garcia formed Navegar in order for Navegar to purchase the assets of Intratec without Navegar assuming the liabilities of Intratec. Intratec and Navegar entered into a formal written agreement in which Navegar purchased the assets of Intratec and did not assume the debts or obligations of Intratec. The sale of the assets of Intratec and the purchase of these assets by Navegar was completed prior to any action being filed by Alicki against Intratec.

After Navegar purchased the assets of Intratec, Navegar did not have any of the officers, directors or shareholders of Intratec as its officers, directors and shareholders. Miguel Garcia is approximately seventy years old and has had no involvement in the business of Navegar other than informally chatting with his son about his business.

Navegar manufactures guns in a location different from the location used by Intratec to manufacture its guns. Navegar manufactures and sells a handgun nearly identical to the Intratec–9 handgun manufactured by Intratec. Navegar has purchased new equipment and manufactures three guns not previously manufactured by Intratec. Navegar employed five or six employees in non-managerial positions who were employed by Intratec, but Navegar did not employ any of the managers who had been employed by Intratec.

The facts in this record cannot support a conclusion that Navegar is a "mere continuation" of Intratec and therefore liable for the debts of Intratec. After Intratec sold its assets to Navegar, Navegar operated in a location different from Intratec's location; Navegar operated under ownership and management different from Intratec; and the management of Navegar expanded the business of Intratec. The fact that the transfer was from father to son and the fact that Navegar continued to manufacture a gun nearly identical to the gun involved here will not support a claim that Navegar is a mere continuation of Intratec.

### CONCLUSION

Navegar's motion for summary judgment (# 53) is granted.