Argued April 4, reversed and remanded with instructions July 6, petition for rehearing denied July 31, 1973

# HARTFORD ACCIDENT AND INDEMNITY COMPANY, *Appellant, v.* MAUS ET UX, *Defendants,* PYLE ET UX, *Respondents.*

511 P2d 839

*Randall E. Thwing,* Eugene, argued the cause for appellant. With him on the briefs were Thwing, Atherly & Butler, Eugene.

*A. J. Morris,* Eugene, argued the cause for respondent. With him on the brief were Bailey, Hoffman, Morris & Van Rysselberghe, Eugene.

DENECKE, J.

The defendants Pyle prevailed in this action on an express indemnity agreement tried before the court without a jury. Plaintiff, Hartford, appeals.

Mrs. Maus was president of Eugene Escrow Service, Inc., a corporation. The company engaged in the escrow business. Statutes required companies engaging in such business to provide a bond. Mrs. Maus secured the defendant George Pyle, a realtor with whom she had done escrow business, and his wife, the defendant Mary Pyle, to sign as indemnitors on the application to Hartford for such bond. Pursuant to such application a bond of escrow agency was issued by Hartford.

Eugene Escrow Service, Inc., defaulted and the state was required to make payments to persons owed by the escrow company. The state obtained a judgment against Hartford, as surety, for such payments. In this action Hartford seeks indemnity for the amount paid to satisfy that judgment and for attorney fees according to the provisions of the indemnity agreement.

The application, prepared by Hartford's agent, states that the bond sought is one "to cover Real Estate License." The bond issued was "Bond of Escrow Agency." The indemnity portion of the application recites: "In consideration of the HARTFORD ACCIDENT AND INDEMNITY COMPANY executing the

bond or instrument herein applied for, the undersigned join * * * in the foregoing indemnity agreement * * * *."

The trial court held for the defendants upon the ground that the bond applied for was never issued.

■ The indemnity agreement also provides that the bond issued is "made part of this agreement." Provisions of the indemnity agreement are then contradictory inasmuch as the bond applied for is "to cover Real Estate License," which is part of the indemnity agreement, whereas the bond issued is a "Bond of Escrow Agency." Being internally inconsistent, the indemnity agreement is ambiguous and, therefore, extrinsic evidence may be introduced to explain the ambiguity. *Erickson v. Grande Ronde Lbr. Co.,* 162 Or 556, 580, 92 P2d 170, 94 P2d 139 (1939).

The evidence is uncontradicted that the intent of all the parties was that the application was to secure an escrow agent's bond for Mrs. Maus' company. There was no suggestion that the company was engaged in the real estate brokerage business and the strong implication is to the contrary. The statute requires no bond for a real estate broker. The use of the phrase "Real Estate License" in the application was clearly a mistake.

If we examine the problem in light of the Pyles' subjective intention rather than their objective intention as expressed in the documents, we reach the same result. The Pyles did not read the application except for the indemnity paragraph which they signed. They also never saw the bond. Their intention was to sign the indemnity agreement so Mrs. Maus could get a bond to continue operating her escrow business.

■ Upon oral argument the questions were raised

whether the plaintiff should have asked that the agreement be reformed to express the real intention of the parties, and whether, without reformation, plaintiff could prevail. We now conclude that the mistake created an ambiguous agreement which can be correctly interpreted by the use of extrinsic evidence; therefore, reformation is not necessary. We so stated in *Williams v. Pacific States Fire Ins. Co.,* 120 Or 1, 5, 251 P 258 (1926) : "If the policy when properly construed in the light of extrinsic facts has the same meaning it would have if reformed and sufficiently shows the agreement of the parties, no reformation is necessary."

The law generally is to the same effect:

"If the contract sufficiently shows the agreement of the parties, when properly construed in view of the extrinsic facts, it need not be reformed, even though the policy itself does not express the actual agreement entered into between the parties." 4A Appleman, Insurance Law and Practice, section 2912, p 624 (1969).

■ The Pyles contend that the agreement ought to be strictly construed against liability because they are uncompensated sureties. Assuming they can be so classified, the only reasonable construction, when the extrinsic evidence is considered, is completely clear: the Pyles agreed to indemnify Hartford in consideration for Hartford issuing an escrow agent's bond.

The Pyles also contend that Hartford did not prove it was legally liable to the state on the bond. Leaving aside other methods by which Hartford may have proved this issue, a copy of the judgment by the state against Hartford was introduced and the attorney for Hartford in the state litigation testified and established by uncontradicted evidence that Hartford was

in good faith when it paid the judgment by the state. The indemnity agreement provided that the indemnitors are required to reimburse the surety for any disbursement "made by it in good faith under the belief that it is or was liable for the amounts so disbursed * * * *."

At oral argument defendants argued that the only question was whether there was any evidence to support the trial court's finding and there being such evidence, we must affirm. As we stated in a previous opinion: "That established principle does not apply here because the facts were undisputed [on the principal issues] and we are not concerned with findings of fact but with an interpretation of the contract." *Meier v. Porter*, 256 Or 261, 266, 472 P2d 814 (1970).

Reversed and remanded with instructions to enter judgment for plaintiff and for a decision on the issue of attorney fees in the trial court.