POWERS, P. J.
*214 *438 In this insurance coverage case, plaintiffs Allianz Global Risks US Insurance Company and Allianz Underwriters Insurance Company (plaintiffs) appeal from the dismissal of their action for statutory and equitable contribution and declaratory judgment against defendants ACE Property & Casualty Insurance Company (ACE), General Insurance Company (General), Westport Insurance Company (Westport), Certain Underwriters at Lloyd's London and Certain London Market Insurance Companies (collectively, London), American Home Assurance Company (American Home), Continental Casualty Company (Continental), Lexington Insurance Company (Lexington), Northern Assurance Company of America (Northern) and Allstate Insurance Company (Allstate), and intervenor Con-way, Inc., (formerly known as Consolidated Freightways, Inc.), the parent company of Freightliner Corporation (Freightliner). Plaintiffs brought the action after defending and indemnifying Daimler Trucks North America LLC (Daimler), as successor to Freightliner, in three "Superfund" claims and more than 1,500 asbestos personal injury claims. Defendants, who were historical primary and excess liability insurers, had insured Freightliner, but declined to contribute to plaintiffs' costs, asserting that, despite the insurance policies, they had agreements with Con-way that showed an intention that defendants would not be required to defend and indemnify Freightliner on potential claims.
After a jury trial, the trial court entered a limited judgment under ORCP 67 B for defendants ACE, General, and Westport and intervenor Con-way, and a separate limited judgment under ORCP 67 B for the London defendants.[1] Plaintiffs' appeals from both *215 limited judgments have been consolidated. Plaintiffs raise multiple assignments, challenging the trial court's rulings relating to the *439 interpretation of ACE, Westport, General, and London's policies of insurance. Amici curiae Port of Portland and United Policy Holders have filed a brief in support of plaintiffs' argument that the trial court erred in its interpretation of the pollution exclusions in the London and General policies.
In a separate appeal from the limited judgment for ACE, General, Westport and Con-way, defendants American Home, London, Continental, Lexington, and Northern also seek reversal, challenging the trial court's denial of plaintiffs' motion for directed verdict or the court's failure to give a peremptory instruction regarding the interpretation of defendants' policies. They argue only that the trial court erred in rejecting plaintiffs' contention that the separate agreements that Freightliner and Con-way had with defendants ACE, Westport, and General to indemnify them against claims on the policies, which were not endorsed into the policies, cannot be considered in the interpretation of the underlying policies.
Intervenor Con-way was Freightliner's parent corporation at the relevant time. In addition to responding to plaintiffs' arguments on appeal, Con-way and defendants ACE, Westport, General, and London cross-assign error, asserting that the trial court erred in denying their motion for a directed verdict on plaintiffs' claims, made on the ground that Daimler did not assume Freightliner's contingent liabilities so as to be entitled to make claims under defendants' policies. For the reasons that follow, we agree with the argument advanced by Con-way and defendants ACE, Westport, General, and London on cross-assignment that the trial court erred in denying their motion for directed verdict and therefore affirm the judgment on that alternate ground, which obviates the need to reach the remaining arguments on appeal.
We summarize the pertinent facts, which are largely undisputed. Freightliner was a wholly-owned subsidiary of Consolidated Freightways (now known as Con-way), in the business of truck manufacturing and logistics. Beginning in 1976, Freightliner was "self-insured," in that it held reserves of $ 1 million for general liability claims and reserves of $ 5 million for products liability claims. But, as Con-way *440 explains, "in the 1970s, it was virtually impossible for self-insured companies to establish compliance with financial responsibility laws in certain states." To satisfy state regulators, Con-way also purchased general liability policies for itself and its subsidiaries, including Freightliner, from 1976 to 1982. In exchange for a small fee, the insurance companies, defendants ACE, General, and Westport among them, issued standard-form general commercial liability policies that Freightliner and Con-way represented to regulators provided coverage with a $ 1 million limit for the liability of the insured. The insurance companies also issued certificates of insurance to state regulators certifying the policies' coverage. London issued excess liability policies to Freightliner from 1977 to 1982.[2]
When Con-way purchased the ACE, Westport, and General policies for itself and Freightliner, it also executed an indemnification agreement with each insurer, in which it agreed to hold the insurers harmless.[3]
*216 On July 31, 1981, Con-way sold Freightliner to Daimler, cancelled any certificates of insurance that had been issued for Freightliner under its policies, and transferred to Freightliner cash reserves that had been set aside for known and unknown claims. On August 14, 1981, Freightliner and Daimler executed an "Agreement and Plan of Liquidation" in which Daimler agreed "unconditionally *441 to pay and discharge any and all liabilities and debts" of Freightliner. The agreement further provided:
"[Daimler] shall deliver to [Freightliner] an instrument of assumption, under the terms of which [Daimler] shall expressly assume and undertake to pay, perform, fulfill and discharge all such liabilities and obligations of [Freightliner], accrued or existing at the time of transfer, whether absolute or contingent, and of whatever nature, except as otherwise provided for herein."
An "Assumption" agreement, signed by Daimler and executed on the same date, provided:
"IN CONSIDERATION OF the transfer and assignment, to [Daimler], of the assets of [Freightliner], and in further consideration of the execution, by [Freightliner], of that certain AGREEMENT AND PLAN OF LIQUIDATION dated as of even date herewith, [Daimler] hereby expressly assumes and undertakes to pay, perform, fulfill and discharge all liabilities and debts of [Freightliner], including, without limitation, all obligations, covenants and duties under any and all leases of real and personal property, obligations under licenses of United States and foreign patents, trademarks, service marks and copyrights, dealer agreements, pension and health plans, financial and credit arrangements, contracts, indentures, mortgages, pledges, warrants, subscriptions, loan agreements, export agreements, employment agreements, insurance agreements and plans, sales and repurchase agreements, indemnity agreements and plans of composition, and all other liabilities and obligations whether accrued, absolute or contingent, as of the date hereof."
Also on the same date, Daimler and Freightliner executed a "Transfer and Assignment Agreement," by which Freightliner assigned to Daimler all of its assets, except for its contingent liabilities. The agreement provided:
"[A]s payment in liquidation of [Daimler's] stock ownership in [Freightliner], [Freightliner] hereby assigns and transfers to [Daimler] * * * all of the properties and assets of [Freightliner] both real and personal, tangible and intangible, of every kind and nature, and wheresoever located, except as set forth in Schedule A hereto * * *[.]
"* * * * *
*442 "Schedule A
"All contingent liabilities, and sufficient cash amounts as are estimated to be necessary to satisfy such liabilities, for which reserves have previously been established. This includes, but may not be limited to, reserves for warranty and insurance claims."
On September 1, 1981, Daimler and Freightliner signed a letter stating:
"This letter will confirm and clarify our mutual intent with respect to the liquidating distribution by Freightliner * * * effected by the Transfer and Assignment dated August 14, 1981. Specifically, we hereby confirm that such instrument was intended to transfer all properties and assets of Freightliner of every kind and nature other than the liabilities of Freightliner referred to in Schedule A and an amount of assets retained sufficient to satisfy such liabilities[.]"
As noted, Schedule A, in turn, explicitly excluded from Daimler's assumption Freightliner's contingent liabilities.
Daimler bought general commercial liability insurance coverage for Freightliner from plaintiffs going forward after July 1, 1981, and also bought a special policy from plaintiffs to provide primary coverage for claims against Freightliner that had been incurred but not reported before the transfer.
*217 Since, Daimler acquired Freightliner, plaintiffs, as Daimler's primary insurers, have defended and paid many claims against Freightliner, including three Superfund claims and many asbestos claims, and plaintiffs brought this action for contribution from defendants. Con-way-as the party who would be called upon to indemnify ACE, Westport, and General under the indemnity agreements-intervened. The case was tried to a jury, which ultimately determined that Con-way, ACE, Westport, and General did not intend that defendants ACE, Westport, and General would have a duty under the policies to defend or indemnify Freightliner. As to plaintiffs' claims against London, the jury determined that they were subject to pollution exclusions. The trial court then entered the two limited *443 judgments for defendants ACE, Westport, General, London, and intervenor Con-way that are on appeal.
Plaintiffs raise seven assignments of error. The first through fourth assignments challenge the trial court's decision, through various rulings, to submit to the jury the question whether Con-way, ACE, Westport, and General intended that ACE, Westport, and General would be called upon to indemnify Freightliner. In their fifth through seventh assignments, plaintiffs challenge the trial court's rulings as to the interpretation of the pollution exclusions in the General and London policies.
In a cross-assignment of error, Con-way and defendants ACE, Westport, General and London assert that the trial court erred in denying their motion for a directed verdict on the question whether Freightliner assigned to Daimler its contingent liabilities. We address that cross-assignment first, because it is dispositive and requires affirmance of the judgments.
It is undisputed that plaintiffs could be entitled to contribution from Freightliner's insurers only if Daimler is responsible for Freightliner's contingent liabilities. As a general rule, a corporation does not become responsible for the liabilities of another corporation by buying its assets and continuing its product line. Erickson v. Grande Ronde Lbr. Co. , 162 Or. 556, 568, 92 P.2d 170, reh'g den. , 162 Or. 556, 94 P.2d 139 (1939). There are four recognized exceptions to the general rule:
"(1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts."
Id . The parties agree that the second through fourth exceptions are not at issue on appeal, and that, if Daimler is responsible for Freightliner's liabilities, it is because it agreed to assume those liabilities. The trial court submitted the question whether Daimler assumed Freightliner's contingent liabilities to the jury, and the jury found that Daimler had assumed Freightliner's obligations. Con-way and defendants contend that the trial court erred in failing to direct a verdict on that issue and in rejecting Con-way's request for a peremptory instruction, asserting that the record requires the finding that *444 Daimler did not assume Freightliner's contingent liabilities.
The question depends initially on an interpretation of the documents relating to the 1981 Freightliner/Daimler asset transfer agreement, which involves the familiar three-step analysis described in Yogman v. Parrott , 325 Or. 358, 361, 937 P.2d 1019 (1997). First, we examine the text and context of the contract provisions at issue. Id . If the text and context are unambiguous, the analysis ends there. Id . If the text and context are ambiguous, then, as a second step, we consider whether extrinsic evidence resolves the ambiguity. Id . at 363, 937 P.2d 1019. If extrinsic evidence has not resolved the ambiguity, then, as a third and final step, we apply established maxims of construction to determine the meaning of the disputed language. Id . at 364, 937 P.2d 1019.
Con-way concedes that if only the documents from August 14, 1981, are considered, then the parties' agreement as to Daimler's assumption of Freightliner's contingent liabilities is ambiguous. The "Agreement and Plan of Liquidation" and the "Assumption" agreement state that Daimler assumes all liabilities, "whether absolute or contingent, *218 and of whatever nature," but the "Transfer and Assignment Agreement" explicitly states that the transfer does not include Freightliner's contingent liabilities. We agree, however, with Con-way that the letter of September 1, 1981, is properly viewed as either a part of the parties' agreement, see Hays v. Hug , 243 Or. 175, 177, 412 P.2d 373 (1966) (observing that documents made by the parties at about the same time as part of the same transaction must be construed together as one contract), or as an addendum intended to eliminate any ambiguity and to clarify that Freightliner's contingent liabilities had not been transferred to Daimler. The letter states explicitly that its purpose is to clarify the terms of the August 14, 1981, agreement. It is signed by the parties and unequivocally and unambiguously states that Freightliner has not transferred, and Daimler has not assumed, Freightliner's *445 contingent liabilities. Thus, because the letter is properly viewed as part of the parties' agreement, and because the text and context of the letter resolve the issue, we do not consider extrinsic evidence of the parties' intent or maxims of construction. See Yogman , 325 Or. at 361, 937 P.2d 1019 ("If the provision is clear, the analysis ends."); see also id . (noting that whether a provision is ambiguous is a question of law).
As such, we agree with the assertions of Con-way and defendants ACE, Westport, General, and London in their cross-assignment that the letter of September 1, 1981, is dispositive, viz ., because Daimler did not assume Freightliner's contingent liabilities, plaintiffs cannot seek contribution from Freightliner's historical primary and excess liability insurers. Accordingly, the trial court erred in denying the motion for a directed verdict as to all defendants, but nonetheless correctly entered judgment for defendants. In light of that conclusion, we need not address plaintiffs' assignments of error, the remaining cross-assignments of error, or the assignment of error on appeal of defendants American Home, London, Continental, Lexington, and Northern.
Affirmed.

The first limited judgment ("Limited Judgment as to Fronting Insurers and Intervenor Con-way, Inc.") provides that the policies issued by ACE, Westport, and General were not intended to provide coverage for the environmental and asbestos claims based on the indemnity agreements between those insurers and Con-way. The second limited judgment ("Limited Judgment Regarding 1977-1981 London Market Policies Pursuant to ORCP 67 B") provides that certain policies issued by London do not provide coverage for the environmental claims based on pollution exclusions in the policies.

The policies issued by ACE, Westport, and General contained standard terms, including the duty to defend and indemnify Freightliner.
The London excess liability policies each contained a qualified pollution exclusion that precluded coverage for certain environmental claims, except "where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance." The first and second General insurance policies also included a pollution exclusion provision that had an exception for claims based on discharges of pollutants that were "sudden, unexpected, unintentional." Policies of other insurers had qualified pollution exclusions with exceptions for "sudden and accidental" discharges.

For example, Con-way's separate agreements with ACE and Westport are entitled "Indemnification Agreement," and provide:
"In consideration of [Con-way] executing this contract of Indemnity, [the insurer] agrees to issue at the request of [Con-way] a Standard General Liability and Automobile Policy."
The indemnification agreements further provided that Con-way agreed to "indemnify and save harmless" the insurer from all losses that those insurers may "sustain, incur or be put to on account of any claim or claims made under or in connection with the policy."